

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-4-1997

# United States v. Moorefield

Precedential or Non-Precedential:

Docket 96-3563

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"United States v. Moorefield" (1997). *1997 Decisions.* Paper 77.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/77

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 96-3563

———————————

UNITED STATES OF AMERICA,

Appellant
v.

GARY MOOREFIELD aka MAURICE GORDON

———————————

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 95-cr-00045-2)

———————————

Argued February 13, 1997
BEFORE:  COWEN, McKEE and JONES*,
Circuit Judges

(Filed April 4, 1997)

Paul J. Brysh, Esq. (argued)
Office of United States Attorney
633 United States Post Office
 and Courthouse
Pittsburgh, PA  15219

COUNSEL FOR APPELLANT

Norma Chase, Esq. (argued)
220 Grant Street
Pittsburgh, PA  15219

COUNSEL FOR APPELLEE

———————————

OPINION

———————————

*Honorable Nathaniel R. Jones, United States Circuit Judge for
 the Sixth Circuit Court of Appeals, sitting by designation.

1

COWEN, Circuit Judge.


This is an appeal by the United States from a pre-trial order suppressing evidence in a criminal prosecution. Specifically, the Government seeks to reverse the district court's suppression of a firearm that was found in the possession of passenger-defendant Gary Moorefield after the car in which he was riding was stopped for a routine traffic violation.

Moorefield argues that the pistol must be suppressed for two reasons. First, he submits that the police officers involved in the traffic stop unlawfully ordered him and the driver to remain in the car with their hands in the air. Second, he contends that the pat-down that produced the weapon was illegal.

We hold that police officers may constitutionally order occupants of cars to remain in the vehicle with their hands up in the air. We further hold that based on Moorefield's behavior, and in particular his failure to follow directions, the officers were justified in conducting a pat-down for weapons.

I.

Moorefield was charged in one count of a five-count indictment with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1)(Supp. 1997). He originally pled not guilty but later changed his plea to guilty. Subsequently, however, he withdrew his plea of guilty and filed a motion to suppress the pistol that was found on his person when he was frisked following a routine traffic stop. The district court held an evidentiary hearing at which Police Officer Anthony

2

Wiles was the sole witness for the government.  Officer Wiles' account of the facts is essentially undisputed.

At approximately 10:13 p.m. on July 28, 1994, Officer Wiles and his partner were on routine patrol in the East Liberty section of Pittsburgh.  At that time they observed a car make a right turn, cross from the right lane into the left lane in front of traffic, almost hit an oncoming car, and then make a left turn without signaling.  Because of the violation of the Pennsylvania Motor Vehicle Code, 75 Pa. C.S.A. § 3334 (West 1996), but not by reason of any suspicion that the occupants of the car were engaged in criminal activity, the officers required the vehicle to stop and pull over to the side of the road.

The car had two occupants, driver Dana Moore and passenger Moorefield.  After Moore pulled the car over, Moorefield attempted to exit the car.  The officers instructed him to remain in the vehicle.  For their personal safety and as a routine practice, the officers instructed both Moore and Moorefield to show their hands at all times or to put their hands up in the air.  Moore followed the officers' directions.  Moorefield did not.

Wiles perceived Moorefield to lean back and shove something down toward his waist.  Once again, the officers directed him to show his hands.  In response, Moorefield pushed his upper-body out of the window, which again prompted the officers to order him to remain inside the car with his hands in view.  He then raised and lowered his hands several times before finally keeping them up in the air as instructed.  Officer Wiles testified that

3

because of Moorefield's suspicious hand and body movements, he believed that Moorefield may have been trying to conceal a weapon or narcotics.

The officers requested additional police assistance. When the back-up unit arrived, they approached the vehicle and ordered Moore and Moorefield to step out. Moorefield exited the car with his hands up. At that time and for safety reasons, Officer Wiles conducted a pat-down search for weapons. The pat-down revealed a pistol in the waistband of Moorefield's shorts. Moorefield filed a motion to suppress the pistol from being received into evidence.

Following an evidentiary hearing and relying on Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330 (1977)(per curiam), the district court found that the officers acted lawfully when they ordered Moore and Moorefield to place their hands in the air while the traffic stop was being conducted. It also ruled that the officers acted lawfully to protect themselves when ordering Moorefield to exit the car. However, the district court went on to hold that the pat-down for weapons was unjustified. It based its ruling on several factors. First, the district court pointed to the fact that Moorefield eventually placed his hands in the air and raised his arms when he exited the vehicle. The district court also stated that Moorefield's behavior in raising and lowering his hands was not suspicious and was consistent with innocent, as well as unlawful, behavior. Finally, the court placed great importance on the fact that Officer Wiles was not certain at the time of the stop and the subsequent pat-down that

4

Moorefield possessed a weapon.  The district court granted Moorefield's motion to suppress the pistol.  This appeal followed.

## II.

For Fourth Amendment purposes, the traffic stop in this matter may be divided into four stages: (1) the initial stop, (2) the order to remain in the vehicle with hands in view, (3) the order to exit the car, and (4) the pat-down search for weapons.

With respect to the first stage, Moorefield does not contest the legality of the initial stop of the vehicle.  It is well-established that a traffic stop is lawful under the Fourth Amendment where a police officer observes a violation of the state traffic regulations.  See, e.g., Mimms, 434 U.S. at 109, 98 S.Ct. at 332;  United States v. Johnson, 63 F.3d 242, 245 (3d Cir. 1995), cert. denied, 116 S.Ct. 2528 (1996).  Regarding the third stage, we need not address the issue of whether the officers lawfully ordered Moorefield out of the vehicle.  The Supreme Court's recent bright-line ruling in Maryland v. Wilson, No. 95-1268, 1997 WL 65726 (Feb. 19, 1997) upheld an identical order.  Therefore, we need only assess the constitutionality of the second and fourth stages.  Because the facts in this case are undisputed, we exercise plenary review over the district court's legal conclusions regarding the remaining stages of the traffic stop.  See United States v. Coggins, 986 F.2d 651, 654 (3d Cir. 1993).

5

A.

We turn first to whether the police officers lawfully ordered passenger Moorefield to remain in the car and put his hands in the air while the traffic stop was being conducted. We adjudicate this issue in light of the recent Supreme Court case of Maryland v. Wilson, No. 95-1268, 1997 WL 65726 (Feb. 19, 1997). In a prior case, the Supreme Court held that a police officer may order the driver of a lawfully stopped car to exit the vehicle. See Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330 (1977)(per curiam). In Wilson, the Supreme Court extended the bright-line rule in Mimms by holding that a police officer conducting a routine traffic stop may lawfully order passengers to exit a car pending completion of the stop. Wilson, 1997 WL 65726, at *5.

In arriving at this conclusion, the Court balanced under the Fourth Amendment the public interest in officer safety against the passenger's right to "personal security free from arbitrary interference by law [enforcement] officers." Id. at *3 (alteration added)(quoting Mimms, 434 U.S. at 109, 98 S.Ct. at 332 (quoting United States v. Brignoni-Ponce, 422 U.S. 873, 878, 95 S.Ct. 2574, 2579 (1975))). The Supreme Court found that the interest in officer safety outweighs the minor intrusion on passengers who are "already stopped by virtue of the stop of the vehicle." Id. at *4. The Court continued: "The only change in [the passengers'] circumstances which will result from ordering them out of the car is that they will be outside of, rather than inside of, the stopped car. Outside the car, the passengers will

6

be denied access to any possible weapon that might be concealed in the interior of the passenger compartment." Id.

In view of the Supreme Court's ruling in Wilson, we have no hesitancy in holding that the officers lawfully ordered Moorefield to remain in the car with his hands in the air. We follow the Court's analysis in Wilson. The only change in Moorefield's circumstances resulting from the order to remain in the car and put his hands in the air, was that he remained inside of the stopped car with his hands in view, rather than inside of the stopped car with his hands lowered into a passenger compartment that could potentially contain a concealed weapon. Just as the Court in Wilson found ordering a passenger out of the car to be a minimal intrusion on personal liberty, we find the imposition of having to remain in the car with raised hands equally minimal. We conclude that the benefit of added officer protection far outweighs this minor intrusion.

### B.

The second issue that we must review is whether the officers lawfully conducted a pat-down for weapons. The Supreme Court has repeatedly recognized that traffic stops are dangerous encounters that result in assaults and murders of police officers. See, e.g., Wilson, 1997 WL 65726, at *4; Michigan v. Long, 463 U.S. 1032, 1047, 103 S.Ct. 3469, 3480 (1983); United States v. Robinson, 414 U.S. 218, 234 n.5, 94 S.Ct. 467, 476 n.5 (1973); Adams v. Williams, 407 U.S. 143, 148 n.3, 92 S.Ct. 1921, 1924 n.3 (1972). In Wilson, the Court further observed that the risk of

7

danger to a police officer conducting a traffic stop is "likely to be greater when there are passengers in addition to the driver in the stopped car." Wilson, 1997 WL 65726, at *5.

In Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883 (1968), the Supreme Court held that a police officer may conduct a reasonable search for weapons for his own protection "where he has reason to believe that he is dealing with an armed and dangerous individual." The Court stated that a pat-down for weapons can occur only where the officer is "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21, 88 S.Ct. at 1880. In order to minimize the dangers faced by police officers conducting traffic stops, the Court has extended the constitutional principles in Terry to situations involving officers and motorists. See, e.g., Long, 463 U.S. 1032, 103 S.Ct. 3469; Mimms, 434 U.S. 106, 98 S.Ct. 330.

Utilizing the standards set forth by the Supreme Court in cases such as Terry, Long, and Mimms, many courts of appeals have upheld limited weapon pat-downs of passengers where the passengers have engaged in suspicious behavior similar to that of Moorefield. For example, in United States v. Fryer, 974 F.2d 813, 819 (7th Cir. 1992), the Seventh Circuit upheld a search of a vehicle pursuant to a routine traffic stop where "the officer observed furtive movements between the driver and the passenger, as if they were passing something between them." The court observed, in dicta, that under these circumstances, the officers' pat-down search of both the driver and the passenger was also

8

justified.  See id.  In another case, the Fifth Circuit upheld the frisk of a passenger where the officer observed the passenger stoop down and move from side to side.  United States v. Colin, 928 F.2d 676, 678 (5th Cir. 1991).  See also United States v. Woodall, 938 F.2d 834, 837 (8th Cir. 1991)(pat-down search of passenger upheld, in part because passenger leaned down to the floorboard of the vehicle at least twice after officers signaled the vehicle to pull over); United States v. Taylor, 716 F.2d 701, 709 (9th Cir. 1983)(pat-down search of passenger upheld, in part because passenger twice disobeyed an order to raise his hands, and also "made furtive movements inside the [vehicle] where his hands could not be seen").

Similarly in this case, Officer Wiles pointed to "specific and articulable facts which, taken together with rational inferences from those facts," reasonably warranted the pat-down.  See Terry, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880.  Moorefield's furtive hand movements and refusal to obey the officers' orders constituted suspicious behavior.  Officer Wiles testified that in response to his instruction to Moorefield to remain in the vehicle with his hands in view, Moorefield attempted to exit the vehicle and then raised and lowered his hands several times.  In addition, Moorefield leaned back and appeared to shove something down toward his waist.  Officer Wiles testified that based on his experience, Moorefield's behavior was consistent with the behavior of a person trying to conceal something.  Although Officer Wiles testified that he was not sure whether Moorefield was attempting to hide narcotics or a firearm, an "officer need

9

not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Id. at 27, 88 S.Ct. at 1883.  Moorefield's behavior embodied the kind of specific, articulable facts that Terry contemplates and, therefore, warranted a pat-down search for weapons.

We find that the district court erred in concluding the pat-down unjustified.  Officer Wiles' pat-down search of Moorefield was reasonable under the Fourth Amendment, and the pistol seized pursuant to the search may properly be introduced into evidence.

We will reverse the September 5, 1996, order of the district court suppressing the firearm seized from Moorefield, and remand for further proceedings.