

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-5-2004

# Bloxson v. Wilkinsburg

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1108

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Bloxson v. Wilkinsburg" (2004). *2004 Decisions*. Paper 255.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/255

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-1108
_____

AMY BLOXSON, individually and in her capacity as Administrator of the Estate of
Raynard L. Bloxson, Deceased; THE ESTATE OF RAYNARD L. BLOXSON,

Appellants,

v.

BOROUGH OF WILKINSBURG; BOROUGH OF WILKINSBURG POLICE
DEPARTMENT; OFFICER MICHAEL MINCIN, individually and in his capacity as a
Borough of Wilkinsburg Police Officer; OFFICER ALAN FELLER, individually and in
his capacity as a Borough of Wilkinsburg Police Officer

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA
District Court Judge: The Hon. Donetta W. Ambrose, Chief Judge
(Pa. District Civil No. 99-cv-00834)
_____

Submitted Under Third Circuit LAR 34.1(a)
September 28, 2004

Before: RENDELL, FUENTES, and SMITH, Circuit Judges.

(Opinion Filed: October 5, 2004)

_____

OPINION OF THE COURT
_____

FUENTES, <u>Circuit Judge</u>:

On September 25, 1998, Officers Michael Mincin and Alan Feller conducted a traffic stop on a vehicle in which Raynard L. Bloxson was riding as a passenger. When Bloxson exited and walked away from the car, the Officers ordered him back. Upon returning, Bloxson reached into the car and retrieved a backpack. As he did so, a handgun fell to the sidewalk. Both of the Officers ordered Bloxson not to pick up the gun. When Bloxson nevertheless reached for the weapon and picked it up, Mincin fatally shot him. This action against the Officers and the Borough of Wilkinsburg and its police department for, among other things, violations of the Fourth and Fourteenth Amendments was commenced by Bloxson's mother, both individually and as Administratrix for Bloxson's estate.[1] The Officers moved for summary judgment on qualified immunity grounds. The District Court, adopting the Magistrate's findings and recommendation, granted summary judgment. We will affirm.

I.

As we write solely for the parties, our recitation of the facts will be limited to those necessary to our determination. On September 25, 1998, two police officers, Michael Mincin and Alan Feller, pulled up behind a parking car with their emergency lights on, after learning that the car's registration had been suspended. One of the passengers, Raynard L. Bloxson,

_____

[1] Given the dual role of Ms. Bloxson in this case, we will refer to Appellants in the plural in this opinion.

exited the vehicle and approached the house in front of which the vehicles were parked. The Officers ordered Bloxson to return to the car, and he complied. Upon reaching the car, Bloxson retrieved a backpack and began to return to the house. However, upon turning, a gun fell from the bag onto the sidewalk. According to the complaint in this action, Bloxson then reached down, picked up the weapon, turned around, and began to run from the scene. At some point during this activity, Mincin shot Bloxson twice in the back, fatally wounding him. Bloxson's complaint states that he was shot while running away.[2] Mincin testified at the coroner's inquest that he shot Bloxson while Bloxson was reaching for the gun on the sidewalk. Feller testified that Mincin shot Bloxson after Bloxson had retrieved the weapon and turned its barrel closer to the direction of Mincin.

Bloxson's mother, individually and as Administratrix of her son's estate, brought suit against Mincin and Feller, with claims of alleged violations of the Fourth and Fourteenth Amendments as well as wrongful death and negligence claims under Pennsylvania law. She also filed claims against the Borough of Wilkinsburg and its police department, for failure to train the Officers with respect to those claims. The District Court first granted motions for summary judgment by the Borough and the police department and then, upon recommendation of the Magistrate Judge, entered summary judgment on the federal civil rights claims in favor of Mincin and Feller on the basis of qualified immunity. The Court

---

[2] However, Appellants' brief to this Court inconsistently suggests that "Bloxson never actually touched the gun which fell from his back pack." Br. of Appellees at 7.

refused to exercise supplemental jurisdiction over the state law claims, and Appellants do not appeal that decision. The only issue Appellants raise is whether the District Court erred in finding that the Officers did not violate the Fourth and Fourteenth Amendments.

## II.

When reviewing a grant or denial of summary judgment, "we apply the same test employed by the District Court under Federal Rule of Civil Procedure 56(c)." Morton Int'l, Inc. v. A.E. Staley Mfg. Co., 343 F.3d 669, 679-80 (3d Cir. 2003). Thus, a District Court's grant of summary judgment must be affirmed only if it appears that there is no genuine issue as to any material fact and that Appellees are entitled to a judgment as a matter of law. Id. In evaluating the evidence, we take the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. Id.

## III.

Section 1983 provides a cause of action for "any person who has been deprived of rights secured by the Constitution or laws of the United States by a person acting under color of law." Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002). Appellants' § 1983 claims here are for damages stemming from the alleged Fourth and Fourteenth Amendment violations. Under the doctrine of qualified immunity, "officers performing discretionary functions are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Id. (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In order to evaluate

a claim for qualified immunity, a court must first decide whether a constitutional violation occurred, and, if so, then decide whether the violated right was clearly established. Id. (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).

Appellants' Fourth Amendment claim alleges that the Officers unreasonably seized Bloxson during the traffic stop and the ensuing "apprehension" through the use of deadly force. Compl. ¶ 28. It is clear that both the traffic stop and the apprehension constitute seizures for the purpose of the Fourth Amendment. See Whren v. United States, 517 U.S. 806, 809-10 (1996) (noting that the "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]"); Abraham v. Raso, 183 F.3d 279, 288 (3d Cir. 1999) (stating that "'there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment'" (quoting Tennessee v. Garner, 471 U.S. 1, 7 (1985))). Excessive force allegations are properly scrutinized under a Fourth Amendment objective reasonableness standard. See Graham v. Connor, 490 U.S. 386, 388 (1989). In assessing reasonableness, the court must consider the circumstances of the case, including "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id.

Although the facts surrounding an alleged Fourth Amendment violation are for a jury to determine, the question whether, in light of those facts, the Officers' actions were objectively reasonable is for a court to decide. Sharrar v. Felsing, 128 F.3d 810, 828 (3d Cir. 1997) (noting that "[o]nly if the historical facts material to [the reasonableness determination] are in dispute . . . will there be an issue for the jury"). Because we are reviewing a grant of summary judgment, we must decide whether, viewing the facts in the most favorable light for Appellants, the actions of the Officers here were objectively reasonable.

We will consider the reasonableness of both seizures separately. The traffic stop clearly was reasonable, as the vehicles registration was defective, violating the traffic code. See 75 Pa. Cons. Stat. § 6308(b) (authorizing police officers to conduct traffic stops if there is reasonable suspicion of a traffic code violation). The Officers' order to remain in, or return to, the vehicle also was within reason. See United States v. Moorefield, 111 F.3d 10, 13 (3d Cir. 1997) (finding an order to a passenger to remain in the car during a traffic stop to be reasonable).

Next we must consider whether Mincin's use of deadly force and Feller's failure to prevent that shooting were reasonable. Although Appellants argue that there is a dispute over whether Bloxson actually picked up the gun after it fell to the sidewalk, their complaint directly states that he did pick up the weapon and there is sworn deposition testimony to this effect as well. Given this fact, and the other undisputed facts outlined above, we find, for

-6-

the reasons articulated by the Magistrate, which were adopted by the District Court, that the Officers acted reasonably under the circumstances. Bloxson refused to follow the Officers' orders throughout the encounter, including the order to leave the gun alone once it was on the sidewalk. When Bloxson reached for the gun, and certainly when he actually possessed it, a reasonable officer could have believed that Bloxson became an immediate danger to the Officers and the individuals in the vicinity.[3] Additionally, a reasonable officer could have believed that the use of deadly force was necessary to alleviate that danger. Thus, because both Mincin's decision to act and Feller's failure to stop Mincin were reasonable under the circumstances, no Fourth Amendment violation took place.

Our conclusion that the Officers acted reasonably under the circumstances, and therefore did not violate the Fourth Amendment obviates the need to move onto the second step of the qualified immunity inquiry–whether the constitutional right violated was clearly established.

Appellants Fourteenth Amendment liberty interest claim, assuming that such a claim

---

[3] Appellants cite Hegarty v. Somerset County, 53 F.3d 1367 (1st Cir. 1995), for the proposition that "[c]ourts have decided against a claim of qualified immunity even when a weapon has been actually pointed . . . at the offending officers." Br. of Appellants at 13 n.5. However, the constitutional violation alleged in that case was based on the officers' ill-conceived plan to make a warrantless arrest of the suspect at her cabin, not on the shooting of the suspect once she confronted them with a gun. Id. at 1375. In fact, the court specifically noted that "[p]laintiff acknowledges that the officers did not use excessive force to protect themselves after they forcibly entered the cabin and were confronted by [the suspect], with rifle raised." Id. Moreover, the court in Hegarty reversed a district court's denial of summary judgment, finding that the officers involved actually deserved qualified immunity. Id. at 1379.

is cognizable at all, also does not survive the Officers' qualified immunity for the reasons just explained regarding the Fourth Amendment, as Appellants have failed to demonstrate a constitutional violation inherent in the shooting.

IV.

For these reasons, we conclude that the District Court properly granted summary judgment in favor of Appellees. Accordingly, we will AFFIRM the Order of the District Court.