

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-23-2006

# USA v. Bond

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1664

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Bond" (2006). *2006 Decisions.* Paper 1394.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1394

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-1664

UNITED STATES OF AMERICA

v.

AQUIL BOND,

Appellant.

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 03-cr-00434)
District Judge: Hon. Eduardo C. Robreno

Submitted under Third Circuit LAR 34.1(a)
on January 12, 2006

BEFORE: ROTH, FUENTES and ROSENN*, Circuit Judges

(Opinion Filed: March 23, 2006)

O P I N I O N

**ROTH**, Circuit Judge:

Aquil Bond appeals his judgment of conviction for violating 18 U.S.C. §

922(g)(1), which prohibits the possession of a firearm by a convicted felon. We will affirm

---

*This case was submitted to the panel of Judges Roth, Fuentes and Rosenn. Judge
Rosenn died after submission, but before the filing of the opinion. The decision is filed by a
quorum of the panel. 28 U.S.C.§46(d).

## I. Facts

Because the parties are familiar with the facts, we will provide only a brief synopsis. On October 5, 2002, two undercover Philadelphia Police Officers, Arthur Herder and Lawrence Tilghman, observed Bond on the north side of the 3800 block of Reno Street. As the officers drove past Bond, he looked toward the car, lifted up his shirt, and put his hand on what the officers recognized as the handle of a gun protruding from his waistband. Bond walked past the car and the officers lost sight of him. They circled the block, did not see him, and concluded that Bond must have entered one of the houses in the immediate area. The officers radioed uniformed back-up officers that they had seen a man with a gun at 38th and Reno, provided a description of Bond, and waited for him to reappear. Approximately two minutes later, the officers saw Bond leave a house and get into the passenger seat of a light grey two-door vehicle. The plainclothes officers radioed their back-up to inform them that Bond was in a light grey two-door vehicle heading west.

Within a minute, two back-up uniformed officers, John Joyce and Sean McLaughlin, spotted a light grey vehicle, occupied by two men, traveling west. The officers followed the grey car, lost sight of it briefly, and eventually signaled the car to stop. As the officers approached the car on foot from the rear, Officer Joyce saw Bond look over his left shoulder toward Officer McLaughlin and reach into his waistband area.

2

Officer Joyce pulled his gun and ordered Bond to put his hands on the dashboard. The officer recovered a loaded automatic pistol from Bond's waistband, put it on the roof of the car, and removed Bond from the car to arrest him. Bond subsequently broke away from the officer and fled into an abandoned house at 934 Belmont Avenue. Officer Joyce took possession of the gun, and the officers followed in pursuit and found Bond on the third floor of the building. On the second floor landing of the house, the officers found a loaded magazine that fit the handgun the officers had recovered from Bond. Officer Herder identified Bond as the male he had observed earlier in possession of a gun on Reno Street. Bond was arrested.

Bond was taken to the police station, where a detective informed him of his *Miranda* rights. Bond signed a written waiver of his rights and told the detective that he had bought the gun a couple of weeks before.

Bond moved to suppress the firearm and other fruits of his arrest. The District Court denied the motion. On February 27, 2004, a jury found Bond guilty of possession of a firearm by a convicted felon. Bond appealed.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction of this case pursuant to 18 U.S.C. § 3231. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We subject the District Court's application of the law to the facts and its determinations of reasonable suspicion and probable cause to plenary review. *United States v. Valentine*, 232 F.3d 350, 353 (3d

3

Cir. 2000) (citing *Ornelas v. United States*, 517 U.S. 690, 699 (1996)).

### III. Discussion

Bond argues that mere possession of a firearm on Philadelphia Streets is not a criminal offense and thus does not create probable cause for arrest. However, section 6108 of 18 PA. CONST. STAT. ANN., titled "Carrying Firearms on Public Streets or Public Property in Philadelphia," makes it a crime to carry a firearm on a public street in Philadelphia. The statute provides that:

> "No person shall carry a firearm, rifle or shotgun at any time upon the
>
> public streets or upon any public property in a city of the first class unless:
>
> (1) such person is licenced to carry a firearm; or
>
> (2) such person is exempt from licensing under section 6106(b) of this title
>
> (relating to firearms not to be carried without a license)." (West 2000).

The Pennsylvania courts have interpreted this statute as not requiring the prosecution to prove that the defendant did not have a license for the firearm. *Commonwealth v. Bigelow*, 399 A.2d 392, 396 (Pa. 1979). The possession of a license is an affirmative defense that can be raised by the defendant. *Id.* Thus, under Pennsylvania law, a police officer has probable cause to arrest an individual for violation of section 6108 based solely on the officer's observation that the individual is in possession of a firearm on the streets of Philadelphia. *See Commonwealth v. Romero*, 673 A.2d 374, 377

4

(Pa. Super. 1996).  When Officers Herder and Tilghman observed Bond in possession of a firearm on a public street in Philadelphia, they observed the commission of a completed crime and had probable cause to arrest him.

Bond contends, however, that the information transmitted to Officers Joyce and McLaughlin was insufficient to supply either the requisite reasonable suspicion to justify an investigatory stop or probable cause to arrest him.  Consistent with the Fourth Amendment, law enforcement officers may detain a person if they have reasonable suspicion that "criminal activity is afoot."  *United States v. Valentine*, 232 F.3d 350, 353 (3d Cir. 2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).  If officers are relying on radioed information, the information must have been sufficient to allow the officers a reasonable suspicion to believe the individual they stopped engaged in criminal activity.  *See id.* (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).  Further, in *United States v. Harple*, we found that the "temporal and geographic proximity" of a car to the scene of the crime, the fact that the car substantially matched the description which the officers received, and the fact that the observation of the passengers was consistent with the description given, supplied arresting officers with reasonable suspicion to effect an investigatory stop.  202 F.3d 194, 197 (3d Cir. 1999).  Under the facts here, Officers Joyce and McLaughlin had reasonable suspicion that the car they stopped contained the individual that Officers Herder and Tilghman had observed in commission of a crime.

After the vehicle was stopped, when Officer Joyce saw Bond glance over his

5

shoulder towards Officer McLaughlin and reach into his waistband, Officer Joyce was permitted to search Bond and seize his gun. "[A] police officer may conduct a reasonable search for weapons for his own protection 'where he has reason to believe that he is dealing with an armed and dangerous individual.'" *United States v. Moorefield*, 111 F.3d 10, 13 (3d Cir. 1997) (quoting *Terry v. Ohio*, 392 U.S. 1., 27 (1968)). "[A] pat-down for weapons can occur only where the officer is 'able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Id.* (citations omitted). These principles also apply in the context of officers and motorists. *Id.*

For the above reasons, Bond's seizure did not violate the Fourth Amendment and the motion to suppress evidence was properly denied.

### IV. Conclusion

For the foregoing reasons, we will affirm the judgment of conviction.