

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-20-2008

# USA v. Focareta

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1346

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Focareta" (2008). *2008 Decisions.* Paper 997.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/997

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-1346
_____

UNITED STATES OF AMERICA

v.

JOHN FOCARETA,

Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D. C. No. 05-CR-00227)
District Judge:  The Honorable Joy F. Conti
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 3, 2008

Before:  FISHER and JORDAN, *Circuit Judges*, and YOHN,* *District Judge*.

(Filed:  June 20, 2008)
_____

OPINION
_____

---

*The Honorable William H. Yohn, United States District Judge for the Eastern
District of Pennsylvania, sitting by designation.

YOHN, *District Judge*.

On October 13, 2006, John Focareta enter a conditional plea of guilty to possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). As part of his plea agreement, Focareta preserved his right to appeal the District Court's July 25, 2006 denial of his motion to suppress evidence of the firearm. In his motion, Focareta argued that the arresting police officers did not have reasonable suspicion to warrant the frisk of Focareta that uncovered the firearm. The government argued in response that the police officers acted on reasonable suspicion that Focareta was armed and presently dangerous, justifying a frisk as permitted by *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968). In an extremely thorough opinion denying the motion, the District Court concluded that the police officers acted with reasonable suspicion in stopping Focareta and frisking him for weapons. On appeal, Focareta argues that the District Court erred in reaching its conclusion. We will affirm.

**I.**

The District Court made detailed findings of fact.[1] On July 3, 2005, officers DiMaria and DeMarco were on duty in separate police vehicles monitoring traffic at the intersection of Entrance Drive and Logan's Ferry Road. (R. at 270-71.) At 2:46 a.m.,

---

[1] The District Court drew its findings of fact from the testimonies of Plum Borough Police Officers Joseph DiMaria and Michael DeMarco, whom it found credible. (R. at 278.) It discredited the testimony of Michael Mazur, Focareta's companion on the night of the relevant search. (*Id.* at 278-79.)

DiMaria observed headlights traveling behind and away from Blair Auto Sales car dealership. (*Id.* at 272.) Blair Auto was closed, and the officers were aware that it had been the scene of multiple break-ins, firearm thefts, attempted car and car part thefts, and vandalism. (*Id.*) DiMaria "suspected that someone had broken into one of the cars in the lot at Blair's in order to steal it." (*Id.*) DiMaria investigated on foot, while DeMarco drove across Logan's Ferry Road and down a dirt road behind Blair Auto. (*Id.* at 272-73.)

When DeMarco pulled up to Blair Auto, Focareta and Mazur were walking approximately twenty feet from a red Lexus automobile toward Blair Auto. (*Id.* at 273.) DeMarco exited his vehicle and observed Focareta and Mazur "reaching inside their pockets near their waist several times." (*Id.* at 274.) DeMarco commanded the two men to take their hands out of their pockets so that he could see them. (*Id.*) He "observed Focareta continuing to reach into the front pocket of [his] sweatshirt." (*Id.*) He then drew his weapon and ordered the men to keep their hands where he could see them. (*Id.*) Focareta and Mazur disobeyed his command and retreated to the Lexus, at which point DeMarco instructed both men to place their hands on its trunk. (*Id.* at 274-75.)

DiMaria, who was now beside the Lexus, heard DeMarco order Focareta and Mazur not to move their hands and, later, to place their hands on the trunk of the vehicle. (*Id.*) Noticing their noncompliance with DeMarco's orders, DiMaria ordered the men to "Do it" as they approached the Lexus. (*Id.* at 275.) After the two men placed their hands on the trunk of the vehicle, DiMaria observed Focareta take his right hand from the trunk

3

and attempt to place it into his right front pants pocket, which DiMaria knew from experience was a common location for an individual to conceal a firearm. (*Id.*)

Because both suspects were disobeying DeMarco's orders to keep their hands on the hood, DeMarco handcuffed Focareta, but did not pat him down. (*Id.*) DeMarco then proceeded immediately to Mazur, who was on the other side of the Lexus. (*Id.*) As he approached Mazur, DeMarco noticed Mazur again reach into his right front pocket. (*Id.*) DeMarco conducted an exterior pat down of Mazur's clothing, felt a bulge in his right front pocket that he believed to be a controlled substance, and then removed a clear, knotted, plastic bag that contained powdered cocaine from that pocket. (*Id.* at 275-76.)

After DeMarco started to move Mazur toward the police cruiser, DiMaria approached Focareta to prevent him from running and immediately smelled a strong odor of marijuana on Focareta. (*Id.* at 276.) Using his flashlight, DiMaria observed a multicolored glass marijuana pipe in plain view in the front pouch on Focareta's sweatshirt. (*Id.*) DiMaria removed the pipe from the pouch, along with a knotted plastic bag containing marijuana, which he felt when reaching for the pipe. (*Id.*) DiMaria then patted down the exterior of Focareta's clothing, identifying a bump on Focareta's right hip as the handle of a pistol. (*Id.* at 277.) DiMaria seized a silver and black .45 caliber handgun. (*Id.*) DiMaria arrested Focareta, and the officers placed Focareta and Mazur in separate vehicles and transported them to the Plum Borough police station. (*Id.*)

4

The government charged Focareta with possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (*Id.* at 1.) Focareta moved to suppress the evidence of the pistol, the marijuana pipe, and the bag containing marijuana, arguing that the officers had an insufficient basis to justify a *Terry* stop and frisk. (*Id.* at 2-5.) The District Court held suppression hearings on April 3 and April 12, 2006. (*Id.* at 22-113, 114-244.) On July 25, 2006, the District Court denied the motion to suppress and wrote comprehensive findings of fact and conclusions of law. (*Id.* at 270-294.) The District Court concluded that the frisk was reasonable in light of Focareta's presence at Blair Auto after business hours, the furtive movements observed by the officers, and Focareta's refusal to comply with the police officers' orders. (*Id.* at 289.)

Focareta then pleaded guilty on October 13, 2006 to possession of a weapon in violation of 18 U.S.C. § 922(g)(1), pursuant to a plea agreement that preserved his right to appeal the denial of his motion to suppress. (Appellee's Supp. App. 3.) On January 19, 2007, the District Court sentenced Focareta to fifteen months' imprisonment followed by three years of supervised release. (R. at 295-303.) The District Court entered the judgment of conviction and sentence on January 23, 2007. (*Id.*) Focareta filed his notice of appeal on February 2, 2007. (*Id.* at 304.)

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 because the appeal arises from a final judgment

5

of conviction and sentence. We review the District Court's denial of a motion to suppress using a clearly erroneous standard for the court's findings of fact and using a plenary standard for the court's application of the law to those facts. *United States v. Delfin-Colina*, 464 F.3d 392, 395-96 (3d Cir. 2006); *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002); *United States v. Walton*, 10 F.3d 1024, 1027 (3d Cir. 1993). A finding of fact "is 'clearly erroneous' when, although there is evidence to support it, the reviewing body on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (internal quotation marks and punctuation omitted); *Gordon v. Lewistown Hosp.*, 423 F.3d 184, 201 (3d Cir. 2005). We will not "review a district court's credibility determination." *United States v. Bethancourt*, 65 F.3d 1074, 1078 (3d Cir. 1995).

**III.**

On appeal, Focareta makes two arguments: (1) the District Court erred in its findings of fact when it accepted the police officers' testimonies as true, despite unresolved inconsistencies contained in their testimonies, and then relied on those inconsistencies in reaching its ultimate conclusion; and (2) the District Court erred in denying the motion to suppress the evidence of the firearm because it was obtained from Focareta during an unlawful search.

6

**A.**

The District Court's findings of fact were not clearly erroneous. The District Court found the officers' testimonies credible. (R. at 277-78.) It cited numerous reasons in deciding to "credit[] the testimony of DiMaria and DeMarco and . . . give no weight to Mazur's testimony." (*Id.* at 278.) The District Court acknowledged that "there are several differences between DeMarco's and DiMaria's testimon[ies] and the text of their report." (*Id.* at 277.) The court, however, did "not find that those inconsistencies to be material and they are not enough to discredit the officer's testimony. Specifically, the court notes that there are no inconsistencies between the report and the officer's testimony regarding the defendant's furtive hand movements and his refusal to follow police instructions." (*Id.* at 277-78.) We will abstain from undertaking Focareta's request that we review the District Court's credibility determinations regarding the officers' testimonies, which we do not do, focusing instead only on his argument that the District Court's findings were clearly erroneous.

Focareta argues that the following findings of fact were clearly erroneous: (1) that DiMaria noticed headlights on the road behind Blair Auto, (2) that the red Lexus was stopped at Blair Auto when DeMarco approached, and (3) that Focareta and Mazur continued to reach into their pockets after initially placing their hands on the trunk of the Lexus.

7

First, the District Court found that "DiMaria noticed headlights on the road behind Blair's." (*Id.* at 272.)  The District Court based this conclusion on DiMaria's suppression hearing testimony that "I could see these lights continuing running in front of us the length of the auto lot." (*Id.* at 18; *see also id.* at 33 (DeMarco testified, "Officer DiMaria, as we were talking, stated that he noticed headlights on the road behind Blair's Auto Sales.").)  DiMaria's sworn affidavit of probable cause stated that he "observed a vehicle traveling away from Blair's auto sales along the railroad tracks across from the officers location." (*Id.* at 258; *see also id.* at 254 (police report statement).)  DiMaria likewise called into dispatch that "[there's] somebody going through the weeds, sounds like"; "[t]wo guys behind Blair's"; and "it looks like they are trying to push a car out of here." (*Id.* at 259.)  The District Court's findings were not clearly erroneous as they were supported by the officers' consistent testimonies during the suppression hearing, which the District Court determined were credible.  Neither the sworn affidavit of probable cause nor the abbreviated statement to dispatch clearly contradicts or discredits DiMaria's testimony.  Moreover, none of these alleged contradictions are related to the central issue of whether a frisk was warranted after the stop.

Second, the District Court found that "DeMarco observed two males on the access road walking toward Blair's and away from a red Lexus automobile." (*Id.* at 273.)  The police report prepared by DiMaria, however, states that "[t]hese officers believed that the vehicle was possibly stolen from or involved in some criminal activity at the auto lot

8

[and] *proceeded to stop the vehicle*." (*Id.* at 254 (emphasis added).) When confronted with DiMaria's statements on the police report, DeMarco denied telling DiMaria that he stopped the vehicle and admitted that the information in the police report was not a correct statement. (*Id.* at 74-75.) The statements in the affidavit of probable cause are consistent with DeMarco's suppression hearing testimony, which, again, the District Court determined was credible. (*See id.* at 258.) These alleged contradictions do not undermine the basis for the challenged frisk and, under the deferential clearly erroneous standard, provide no reason to question the District Court's findings of fact drawn from the officers' credible testimonies.

Third, the District Court found that after Focareta and Mazur placed their hands on the trunk of the Lexus, DeMarco observed that "the two men continued to reach around their waist bands and into their front pockets," and DiMaria observed Focareta "take his right hand off of the trunk of the Lexus and attempt to place it into his right front pants pocket." (*Id.* at 275.) These findings were again based on DeMarco's and DiMaria's credible suppression hearing testimonies. (*Id.* at 43, 91-92; *id.* at 127-29.) Focareta contends that DeMarco's suppression hearing testimony was impeached on cross-examination (*see id.* at 97-99), disallowing the District Court from relying on it. While the cross-examination of DeMarco raises some doubt about whether he saw Focareta place his hands in or near his front pockets, we reserve that judgment to the District Court's sound discretion. More important, DiMaria's testimony was directly on point and

9

not impeached on cross-examination.[2]  Thus, the District Court did not clearly err in its finding that DiMaria, the officer who frisked Focareta, witnessed Focareta reach from the trunk to his pocket.

In all, Focareta points to no finding of fact that was clearly erroneous.

**B.**

Focareta argues that the District Court erred in denying his motion to suppress because it incorrectly applied the law to the facts in concluding that the officers had a reasonable, articulable ground to believe that Focareta may have been armed and dangerous.  Focareta thus challenges the validity of the frisk, but does not challenge the validity of the stop.

Consistent with the Fourth Amendment to the United States Constitution, police officers may stop and frisk individuals without probable cause if they have reasonable suspicion—that is if they can articulate specific facts that, taken together with rational inferences from those facts, point to the objective conclusion that criminal activity may be occurring and that the suspect is armed.  *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968); *Illinois v. Wardlow*, 528 U.S. 119, 123-24 (2000).  *Terry* requires two separate sets of articulable facts—one justifying the stop and one justifying the frisk.  After a valid stop, the officer

---

[2]Although Focareta points to DiMaria's testimony that Focareta did not make any threatening hand gestures, this testimony does not address whether DiMaria witnessed Focareta reach with his right hand into his pocket.  DiMaria testified that he did, and the District Court found DiMaria's testimony credible.  (R. at 127-29, 275.)

may conduct a protective frisk of the suspect's outer clothing if the officer has a reasonable belief that the suspect might be armed and presently dangerous. *Terry*, 392 U.S. at 27, 30.

The court measures the reasonableness of the officer's suspicion by taking into account the totality of the circumstances. *United States v. Sokolow*, 490 U.S. 1, 8 (1989); *United States v. Cortez*, 449 U.S. 411, 417 (1981). The totality of the circumstances includes the location, the history of crime in the area, the suspect's nervous behavior or evasiveness, and the officer's "commonsense judgments and inferences about human behavior." *Johnson v. Campbell*, 332 F.3d 199, 206 (3d Cir. 2003) (internal quotation marks and citations omitted). The court should defer to the officer's observations and judgments in reviewing the totality of the circumstances because officers "draw on their own experiences and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *Cortez*, 449 U.S. at 418).

In applying the law to the facts in this case, the District Court relied on two cases from this court, *United States v. Valentine*, 232 F.3d 350 (3d Cir. 2000), and *United States v. Moorefield*, 111 F.3d 10 (3d Cir. 1997), and one from the Court of Appeals for the District of Columbia Circuit, *United States v. Johnson*, 212 F.3d 1313 (D.C. Cir. 2000). All three cases are relevant, but *Moorefield* is most helpful. In *Moorefield*, the

11

court reversed the district court's suppression of a weapon found after a *Terry* frisk where the officers witnessed the suspect make "furtive hand movements" and where the suspect refused to obey an officer's orders to keep his hands in plain sight. 111 F.3d at 14. The court concluded that the furtive movements constituted suspicious behavior—that of a person trying to conceal something—justifying a *Terry* frisk. *Id.* Although the officer conducting the frisk was unsure whether the suspect had a weapon or narcotics, the court noted the *Terry* Court's conclusion that "the officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* (quoting 392 U.S. at 27.)

Under this precedent, the District Court concluded that reasonable suspicion existed for DiMaria to frisk Focareta. The court held that the frisk was justified because (1) DeMarco and DiMaria were aware that Blair Auto was a high crime area; (2) the time was 2:46 a.m.; (3) Focareta placed his hands in his pockets and around his waistband when DeMarco confronted him; (4) Focareta continued to reach for his pockets after being told to stop; (5) DiMaria observed Focareta reach for his waistband after removing his hands from the trunk of the Lexus, despite the officers' requests to cease doing so; and (6) DiMaria knew from experience that weapons are typically concealed in the waistband. (R. at 289-90.) Furthermore, at the time of the frisk, DiMaria (a) knew drugs were found on Focareta's companion; (b) smelled a strong odor of marijuana on Focareta;

12

(c) observed a glass marijuana pipe protruding from Focareta's sweatshirt pouch;

(d) when retrieving the pipe, felt and removed a bag of marijuana from Focareta's pocket;

(e) knew, based on his experience, that those possessing drugs frequently possess weapons and that those possessing weapons typically carry them in their waist band;

(f) knew that Focareta had no explanation for his presence at a suspicious time and place where the officers suspected criminal activity; and (g) knew that DeMarco had drawn his weapon. (*Id.* at 276-77.) The District Court properly concluded that, under these facts, a reasonably prudent person would be warranted in the belief that his safety was in danger.

Focareta argues that DiMaria did not subjectively fear for DeMarco's or his safety and did not subjectively believe that Focareta was armed.[3] The legality of a *Terry* stop and frisk, however, is based on an objective reasonableness test. *See Adams v. Williams*, 407 U.S. 143, 147-48 (1972); *Moorefield*, 111 F.3d at 14. The searching officer's subjective beliefs are part of the totality of the circumstances that the court examines when determining whether there was an objective basis for the frisk. Here, DiMaria expressly testified that neither Focareta nor Mazur did anything to cause sufficient alarm for DiMaria to draw his weapon or to feel that either man was a threat. (R. at 156-57.)

---

[3]Focareta also argues that the totality of the circumstances could not justify a *Terry* frisk because DiMaria never drew his weapon. Considering the circumstances, this argument is frivolous. The absence of a drawn weapon does not create a presumption that a frisk is unwarranted. Furthermore, while DiMaria did not draw his weapon, DiMaria knew that DeMarco had drawn his weapon (*see* R. at 83), undermining any factual basis for Focareta's argument.

13

He also testified that Focareta did not do anything threatening with his hands after placing them on the Lexus.  (*Id.* at 45-46.)  Nonetheless, considering the context outlined by the District Court in its thorough recitation of the facts, under the totality of the circumstances, it did not commit error in concluding that DiMaria was justified in employing a *Terry* frisk to ensure his safety and that of DeMarco.

## IV.

The District Court's findings of fact were not clearly erroneous and its application of the law to the facts was correct.  We will, therefore, affirm.

14