**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4141
_____

UNITED STATES OF AMERICA

v.

SHAMOI BELL,
                         Appellant
_____

On Appeal from the District Court
of the Virgin Islands
(D.C. Criminal No. 3-11-cr-00012-001)
District Judge: Hon. Curtis V. Gomez
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 11, 2012

BEFORE: CHAGARES, JORDAN and COWEN, Circuit Judges

(Filed: May 24, 2012)
_____

OPINION
_____


COWEN, Circuit Judge.

 Shamoi Bell challenges the denial of his motion to suppress by the District Court

of the Virgin Islands.  We will affirm.

## I.

Shortly after midnight on March 6, 2011, Bell was a passenger in a car being driven by Jamoi Benjamin. They approached a checkpoint or roadblock (set up near a particular music and dance event being held that night), in which Virgin Islands police officers were stopping every other vehicle heading in one direction for vehicle inspections. Benjamin's vehicle was stopped because it appeared that neither occupant was wearing a seatbelt (and, when an officer first attempted to stop the vehicle, he was unsuccessful). One of the officers who stopped the car detected the odor of marijuana when he approached the vehicle. He asked the occupants to step out of the car while a trained narcotics dog was brought over to confirm whether there was marijuana in the car. The dog alerted at the front passenger side, where Bell had been. In a subsequent pat-down conducted for officer safety, a .45 Storm Ruger firearm fell from Bell's right pant leg, and, when a second pat-down was conducted after his arrest, a loaded magazine and two dime bags of marijuana were found in his pockets.

Bell moved to suppress, and an evidentiary hearing was conducted before the District Court. The District Court denied his motion. Bell then entered a conditional plea to Count Two (possession of a firearm in violation of title 14, section 2253(a) of the Virgin Islands Code) of the indictment, and he was ultimately sentenced to a term of imprisonment of 12 months and ordered to pay a fine of $5,000.00 as well as court costs in the amount of $75.00.

## II.

2

Arguing that the officers were engaged in random vehicle stops for the sole purpose of checking for licenses, registrations, and other pretextual traffic violations, Bell goes on to claim that there were no written directives, procedures, or specified time periods for the checkpoint, there were no signs posted or previous notices sent out to the public, and there were no reasonable grounds whatsoever to suspect that motorists in the area were unlicensed or driving around in unregistered vehicles.[1] Nevertheless, we determine that the checkpoint at issue here did not violate the Fourth Amendment. Delaware v. Prouse, 440 U.S. 648, 663 (1979) ("This holding does not preclude the State of Delaware or other States from developing methods for spot checks that involve less intrusion or that do not involve the unconstrained exercise of discretion. Questioning of all oncoming traffic at roadblock-type stops is one possible alternative." (footnote omitted)); see also, e.g., City of Indianapolis v. Edmond, 531 U.S. 32, 39 (2000) ("In addition, in [Prouse], we suggested that a similar type of roadblock with the purpose of verifying drivers' licenses and vehicle registrations would be permissible."). Accordingly, the officers were in the proper position to observe any traffic violation. The vehicle at issue here was then properly stopped because of such a violation—a failure to wear seatbelts. See, e.g., V.I. Code Ann. tit. 20, § 466(b) (requiring both driver and front seat passenger to wear seatbelts); United States v. Moorefield, 111 F.3d 10, 12 (3d Cir.

---

[1] The District Court possessed subject matter jurisdiction over this criminal proceeding pursuant to 18 U.S.C. § 3231, and we have appellate jurisdiction under 28 U.S.C. § 1291. We review the District Court's factual findings for clear error and exercise plenary review over the District Court's application of the law to these facts. See, e.g., United States v. Perez, 280 F.3d 318, 336 (3d Cir. 2002).

1997) ("It is well-established that a traffic stop is lawful under the Fourth Amendment where a police officer observes a violation of the state traffic regulations." (citations omitted)).

The officers' subsequent actions were also consistent with the Fourth Amendment. According to Bell, the officers should have done nothing more than issue traffic citations (which were never actually issued in this case) and promptly send Benjamin and Bell on their way. We, however, find that there were sufficient grounds to justify the officers' conduct, noting that Corporal Burke smelled marijuana after he approached the passenger side of the vehicle (where Bell had been sitting), that a drug-sniffing dog made a positive response at this particular location, and that, according to its handler, a dog could very well make a positive response to a residual odor of marijuana. See, e.g., United States v. Givan, 320 F.3d 452, 458 (3d Cir. 2003) ("After a traffic stop that was justified at its inception, an officer who develops a reasonable, articulable suspicion of criminal activity may expand the scope of an inquiry beyond the reason for the stop and detain the vehicle and its occupants for further investigation." (citation omitted)). Under the circumstances, we also agree with the District Court that the subsequent pat-downs conducted by the officers—which resulted in the discovery of a firearm, ammunition, and marijuana—were proper under the Fourth Amendment.

III.

Because we conclude that the District Court appropriately denied the motion to suppress, we will affirm the District Court's criminal judgment.

4