**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2532
_____

UNITED STATES OF AMERICA

v.

JAMES HILL,
            Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-18-cr-00458-001)
District Judge: Honorable Gerald A. McHugh
_____

Submitted under Third Circuit LAR 34.1(a)
April 15, 2020
_____

Before: AMBRO, JORDAN, and SHWARTZ, <u>Circuit Judges</u>.

(Filed: May 5, 2020)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SHWARTZ, Circuit Judge.

James Hill appeals the order denying his motion to suppress a firearm discovered when a police officer frisked him. Because the officer had reasonable suspicion to conduct the frisk, we will affirm.[1]

I

A

After 1:00 a.m. on a July night, Philadelphia Police Officers Eric Bond and Travis Terrell patrolled a West Philadelphia block that had a history of drug activity, shootings, and nonresidents gathering in front of rowhouses. As they drove down the block, they noticed two men sitting on the steps of a rowhouse, so they stopped to determine if the men lived there. One of the men, Hill, went up the stairs to the porch and approached the front door, while the other walked down the sidewalk. Officer Terrell approached the man on the sidewalk, while Officer Bond approached Hill.

Officer Bond stopped at the bottom of the steps and asked Hill, "what's going on, man? Do you live here?" App. 76. As Officer Bond asked the question, Hill tried

---

[1] Hill raises two other issues on appeal. First, he argues that the statute underlying his conviction exceeds Congress' powers under the Commerce Clause. Our precedent forecloses this argument, as he concedes. United States v. Singletary, 268 F.3d 196, 205 (3d Cir. 2001). Second, relying on Rehaif v. United States, 139 S. Ct. 2191 (2019), he argues that the Government failed to prove that "he knew he belonged to the relevant category of persons barred from possessing a firearm." Appellant's Br. at 27 (quoting 139 S. Ct. at 2200). Because our en banc Court will examine the import of Rehaif in United States v. Nasir, No. 18-2888 (3d Cir.), we will hold Hill's Rehaif issue C.A.V. until Nasir is decided. See Mateo v. Att'y Gen., 870 F.3d 228, 231 n.4 (3d Cir. 2017) (explaining that "C.A.V." "is the term we use when we hold an appeal in abeyance pending the outcome of another proceeding").

2

different keys to open the door, but none worked.  Officer Bond began walking up the stairs and asked: "Is this your house?  You sure you live here?"  App. 76.  Hill responded that he lived there but kept his body angled away from Officer Bond.  Officer Bond then asked Hill what the house number was.  Hill became agitated, turned to face Officer Bond, and responded, "what you bothering me for?  I just got off of work."  App. 77.

Hill's answers and demeanor led Officer Bond to believe that Hill did not live at the rowhouse.  Officer Bond continued to ask Hill questions and noticed that Hill put his hands in the front pocket of his sweatshirt.  He asked Hill to take his hands out of his pocket because he knew from his experience that people can carry weapons in their pockets and shoot from pockets.  Hill complied but shortly thereafter returned his hands to his pocket.  Officer Bond asked him again to remove his hands from his pocket.  Hill briefly complied.

When Hill returned his hands to his pocket a third time, Officer Bond suspected that Hill was carrying a gun.  Officer Bond told Hill to take his hands out of his pocket and to put them up.  When Hill did so, Officer Bond reached forward, touched Hill's pocket, and immediately felt a gun.  Officer Bond shouted "gun," Officer Terrell returned, they subdued Hill, and Hill was arrested.

B

Because Hill had a prior felony conviction, a grand jury returned an indictment charging him with possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1).  Hill moved to suppress the firearm as the fruit of an unlawful investigatory

3

stop. The District Court held an evidentiary hearing at which Officers Bond and Terrell testified.

The District Court denied the motion. United States v. Hill, No. 18-458, 2019 WL 1236058, at *1 (E.D. Pa. Mar. 11, 2019). It held that Hill was seized when Officer Bond conducted a protective frisk by touching the front of Hill's sweatshirt. Id. at *3. It also held that the frisk did not violate the Fourth Amendment because Officer Bond, whom the Court found to be credible, id. at *2,[2] had a reasonable suspicion that Hill was on the property unlawfully since (a) Officer Bond "had previously been alerted by neighbors . . . about problems with individuals not from the block sitting on the steps of the neighbors' properties," (b) "Hill did not know the address, nor did any of his keys work," and (c) Hill "was agitated by the officer's questioning," id. at *3-4 (citing Terry v. Ohio, 392 U.S. 1, 30 (1968) (holding a stop-and-frisk does not violate the Fourth Amendment if justified by reasonable suspicion)). "That reasonable suspicion," the Court continued, "supported the protective frisk because Hill's agitation and repeated movements toward his pocket made Officer Bond concerned for the safety of himself and others." Id. at *4.

---

[2] Hill argues that Officers Bond and Terrell differed on the number of people on the block when they arrived, with Bond testifying that "multiple groups of people" were on the street, App. 68, Terrell saying that he only saw the two men and that this difference "casts a pall over their account of why Hill was confronted," Appellant's Br. at 20. In his closing argument at the suppression hearing, Hill did not argue that the differing testimony made Officer Bond not credible, and the District Court found Officer Bond's account credible, Hill, 2019 WL 1236058, at *2. We defer to the Court's credibility determination. Ornelas v. United States, 517 U.S. 690, 700 (1996); United States v. Mallory, 765 F.3d 373, 382 (3d Cir. 2014).

The case then proceeded to trial, and the jury returned a guilty verdict. Hill appeals.

II[3]

The Fourth Amendment prohibits an investigatory stop (a "Terry stop") and an accompanying protective frisk absent reasonable suspicion. United States v. Foster, 891 F.3d 93, 104 (3d Cir. 2018). The District Court held, and the parties agree, that a Terry stop and protective frisk occurred when Officer Bond touched Hill's sweatshirt pocket. See United States v. Brown, 765 F.3d 278, 289 (3d Cir. 2014) (holding that a police encounter "ripened into a Terry stop at the moment [the officer] grabbed [the defendant's] waistband"). Thus, we must determine whether Officer Bond, when he frisked Hill's pocket, had "a reasonable, articulable suspicion that criminal activity [was] afoot," Foster, 891 F.3d at 104 (quoting United States v. Graves, 877 F.3d 494, 498 (3d Cir. 2017)), and "reason to believe that the suspect may pose a danger to the officers," United States v. Lowe, 791 F.3d 424, 430 (3d Cir. 2015).

"We evaluate the totality of the circumstances in considering 'whether a reasonable, trained officer standing in [the officer's] shoes could articulate specific reasons justifying [the] detention.'" United States v. McCants, 952 F.3d 416, 422 (3d Cir. 2020) (alterations in original) (quoting Brown, 448 F.3d at 246-47). Factors that

_____

[3] When examining a suppression ruling, "[w]e review the District Court's factual findings for clear error and its legal conclusions de novo." United States v. McCants, 952 F.3d 416, 421 (3d Cir. 2020). We review "whether a seizure is supported by reasonable suspicion" de novo, United States v. Lowe, 791 F.3d 424, 427 (3d Cir. 2015), but "give due weight to a trial court's finding that the officer was credible and [the officer's] inference was reasonable," Ornelas, 517 U.S. at 700.

5

"indicate suspicious behavior include the suspect's presence in a high crime area, presence on a street at a late hour, . . . behavior that conforms to police officers' specialized knowledge of criminal activity," United States v. Hester, 910 F.3d 78, 87 (3d Cir. 2018) (quotation marks, citations, and alterations omitted), "furtive hand movements[,] and refusal to obey the officers' orders," United States v. Moorefield, 111 F.3d 10, 14 (3d Cir. 1997), including a suspect's refusal to remove his hands from his pockets despite several requests to do so, e.g., United States v. Mouscardy, 722 F.3d 68, 75-76 (1st Cir. 2013).

Each of those factors is present here: (1) at 1:40 a.m., Hill was in a high-crime area where neighbors had recently reported that nonresidents had been congregating on properties; (2) Hill sought to avoid encountering the police by approaching the door to a house for which he did not have a key to enter and did not know the house number, showing that he did not live there, see United States v. Robertson, 305 F.3d 164, 167 (3d Cir. 2002) (instructing that the "totality of the circumstances" includes "common sense judgments about human behavior"); (3) Hill was evasive as he faced away from Officer Bond and did not fully answer his questions; and (4) Hill repeatedly returned his hands to his pockets, despite requests not to do so, suggesting that he may have been armed or in possession of contraband.[4]  These facts, taken together, gave Officer Bond reasonable

---

[4] Hill argues that his attitude towards Officer Bond's questioning and conduct in repeatedly returning his hands to his pocket, despite requests not to do so, evince only a refusal to cooperate and cannot justify reasonable suspicion.  While "a refusal to cooperate with the police in a consensual encounter, without more, cannot constitute reasonable suspicion for a stop," United States v. Bonner, 363 F.3d 213, 218 (3d Cir. 2004), this is not a case where the investigating officer relied only on a refusal to

suspicion that Hill did not live at the house and that he was armed.  Accordingly, the stop and protective frisk was justified.

III

For the foregoing reasons, we will affirm the District Court's order denying Hill's motion to suppress and hold the remainder of the appeal C.A.V.

---

cooperate for his reasonable suspicion.  Rather, as discussed above, a number of facts informed Officer Bond's suspicion.  Moreover, Hill did not simply refuse to answer questions—he repeatedly refused to comply with requests to keep his hands displayed and instead appeared to handle something in his pocket, which allowed Officer Bond to infer, based on his experience, that Hill was in possession of a weapon or contraband. Mouscardy, 722 F.3d at 75-76.