978 F.2d 722

**UNITED STATES of America**

v.

**Henry Jerome HICKS, Appellant.**

No. 91–3195.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 24, 1992.

Decided Nov. 3, 1992.

As Amended Jan. 12, 1993.

W. Gregory Spencer, Asst. Federal Public Defender, argued the cause for appellant. With him on the briefs was A.J. Kramer, Federal Public Defender.

Peter R. Zeidenberg, Asst. U.S. Atty., argued the cause for U.S. With him on the brief were Jay B. Stephens, U.S. Atty., John R. Fisher, Thomas J. Tourish, Jr., CeLillianne Green, and Erik Christian, Asst. U.S. Attys.

Before WALD, SILBERMAN, and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

The first question in this appeal is whether the defendant had standing to challenge a warrantless search and seizure in another's apartment in which the defendant, present as a "guest," was selling crack cocaine to outsiders. The second issue, which we find unnecessary to decide for the reasons given later, concerns the proper application of the Sentencing Guidelines with respect to acceptance of responsibility for conduct other than that involved in the offense of conviction.

The facts are these. An undercover officer, seeking to buy cocaine, was taken by a female he encountered on the street to the apartment of one Robert Cole. The officer there engaged in a transaction with Henry Jerome Hicks. Hicks emptied a bottle containing pieces of crack cocaine on a table. The officer made a selection and handed Hicks a pre-marked $20 bill. Shortly thereafter, as other officers were arresting Hicks—outside the apartment according to the officers or inside according to Hicks—he dropped a ziplock bag containing 0.11 grams of crack cocaine. A search of Hicks' person incident to his arrest produced the pre-marked $20 bill. Robert Cole, who was present during these events, then consented to a search of his apartment. (Hicks claimed the police had already searched the apartment.) Inside, on a window sill, officers discovered a medicine bottle holding 8.48 grams of a substance containing cocaine base.

Hicks was charged in count one of an indictment with distributing cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 18 U.S.C. § 2, and in count two with possession with intent to distribute five or more grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). After an evidentiary hearing, the district court denied Hicks' motion to suppress the evidence seized during his

arrest and cocaine seized in the apartment on the ground that he lacked standing under the Fourth Amendment. The case then proceeded to trial. When Hicks took the stand, he admitted committing the offense charged in the distribution count, but protested his innocence of the count charging possession with intent to distribute. He denied having any knowledge of the medicine bottle seized on the window ledge and testified that he had left the vial containing the crack he showed to the undercover officer in a wastebasket in the bathroom. The jury convicted Hicks on count one, but was unable to reach a verdict on count two. In calculating Hicks' sentence (63 months' imprisonment) the district court considered the eight grams of cocaine base found in the medicine bottle to be part of Hicks' "relevant conduct" [1] and denied him a two-point reduction in his offense level for acceptance of responsibility.

## I

In light of the evidence developed during the pre-trial suppression hearing, the district court properly held that Hicks had failed to sustain his burden of showing that his Fourth Amendment rights had been violated. *See Rakas v. Illinois*, 439 U.S. 128, 131 n. 1, 99 S.Ct. 421, 424 n. 1, 58 L.Ed.2d 387 (1978). Hicks had moved to suppress the pre-marked currency and the cocaine base from the ziplock bag as the fruits of an illegal warrantless arrest inside a private dwelling and the medicine bottle as the result of an unlawful search. In order to go forward on these claims, it was incumbent upon him to establish that he had a "legitimate expectation of privacy in the invaded place," here Cole's apartment. *Rakas v. Illinois*, 439 U.S. at 143, 99 S.Ct. at 430. An expectation of privacy, the Supreme Court has told us, is "legitimate" only if it is one "society is prepared to recognize as reasonable." *Minnesota v.*

---

1. Hicks claims that the district court's decision to include the eight grams of cocaine base as part of his relevant conduct under U.S.S.G. § 1B1.3 was not supported by sufficient evidence. Our review of the record convinces us that the district court's ruling on this issue is amply supported and we therefore affirm this

portion of the court's sentencing determination. (Hicks does not otherwise challenge the inclusion, as relevant conduct under § 1B1.3, of conduct underlying the charge on which the jury hung. *Compare United States v. Boney*, 977 F.2d 624, 635–36 (D.C.Cir.1992); *id.* at 643–47 (Randolph, J., concurring in part).)

*Olson,* 495 U.S. 91, 97, 110 S.Ct. 1684, 1688, 109 L.Ed.2d 85 (1990).

The evidence at the hearing showed that at the time of his arrest (12:55 a.m.), Hicks was using Cole's apartment to conduct an illegal business. He had a supply of crack cocaine. He welcomed those who came to purchase drugs. He engaged in a drug transaction there late at night with an undercover officer, apparently a complete stranger off the street. *Cf. Lewis v. United States,* 385 U.S. 206, 211, 87 S.Ct. 424, 427, 17 L.Ed.2d 312 (1966). Hicks was not engaging in any "longstanding social custom that serves functions recognized as valuable by society." *Minnesota v. Olson,* 495 U.S. at 98, 110 S.Ct. at 1688. Quite the opposite. Much of the evidence relating to Hicks' activities in the apartment was derived from the observations of the undercover officer. It was not challenged and, in light of *Lewis,* could not successfully have been excluded on the basis of any Fourth Amendment claim. In evaluating Hicks' legitimate expectation of privacy, we therefore find it material that Hicks treated the apartment as a base for his business operations, not as a sanctuary from outsiders. Apart from this, the other evidence relating to Hicks' standing came from Cole, who was Hicks' only witness at the hearing. Cole said that Hicks had arrived several hours before the undercover officer appeared and that he had brought some liquid refreshments and ice. But that evidence does not distinguish Hicks from any other invited guest who might have been on the premises when the police showed up. It shows at most that Hicks planned to stay awhile and that Cole assented, facts one might have inferred even without Cole's testimony.

The Court in *Olson* concluded that an overnight house guest had a legitimate expectation of privacy in his host's home and thus could challenge the police's warrantless entry into the home to arrest him. *See* 495 U.S. at 96–98, 110 S.Ct. at 1687–1688. At the same time, the Court reaffirmed the principle that one must be more than simply " 'legitimately on [the] premises' " in order to assert Fourth Amendment claims. *Id.* at 97, 110 S.Ct. at 1688 (*quoting Rakas,*

439 U.S. at 142, 99 S.Ct. at 429). Hicks may have been "legitimately" in the apartment, in the respect that Cole permitted his presence, but Hicks established nothing more at the hearing. *See generally* 4 W. LaFave, Search and Seizure § 11.3, at 45–47 (Supp.1991). The district court therefore correctly declined to consider further Hicks' Fourth Amendment claims. *See United States v. Sweeting,* 933 F.2d 962, 964 (11th Cir.1991); *Lewis v. United States,* 594 A.2d 542, 544–46 (D.C.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1225, 117 L.Ed.2d 460 (1992).

■ If we evaluated Hicks' standing in light of the testimony that came out during the trial, as Hicks urges on appeal, the result might be different. Undisputed evidence at trial indicated that Hicks initially meant to spend only a few hours in Cole's apartment on the night of the arrest, but changed his mind when a female acquaintance with whom he had made plans failed to appear. Cole testified that Hicks then "asked me could he lay down [on the couch] and get a little rest. I told him yeah." Hicks was asleep on the couch when the undercover officer arrived. Hicks testified that he was a regular visitor to Cole's apartment, frequently stopping by on his way home from work to "sit down, drink beer, watch TV, and drink a little liquor." This evidence would make the standing question closer, if only because Hicks may have approached the status of an overnight guest. *Cf. United States v. Osorio,* 949 F.2d 38, 41 (2d Cir.1991).

■ The problem for Hicks is that he did not again move to suppress when this evidence came to light at trial. An appellate court should not rely on evidence first produced at trial to reverse a pre-trial denial of a suppression motion not renewed at trial. *See* 4 W. LaFave, Search and Seizure § 11.1(b), at 197 (2d ed. 1987). *Cf. United States v. Quiroz–Carrasco,* 565 F.2d 1328, 1330 (5th Cir.1978); *Rouse v. United States,* 359 F.2d 1014, 1016 (D.C.Cir.1966). It is true that reviewing courts routinely consider trial evidence in affirming pre-trial suppression rulings.

*See, e.g., Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925); *United States v. Snyder,* 872 F.2d 1351, 1356–57 (7th Cir.1989); *United States v. Basey,* 816 F.2d 980, 983 n. 1 (5th Cir.1987). *Cf. United States v. Foster,* 783 F.2d 1082 (D.C.Cir.1986) (en banc). There is no incongruity in this. It would be wasteful to remand so that the district court could reconsider its denial of a suppression motion in light of trial evidence the reviewing court believes supports the denial.[2] *See SEC v. Chenery Corp.,* 318 U.S. 80, 88, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943). The situation is different when evidence presented only at trial casts doubt on what would otherwise be a correct pre-trial denial of a suppression motion.[3] It is no great burden on defense counsel to renew a suppression motion at trial. *See United States v. Raddatz,* 447 U.S. 667, 678 n. 6, 100 S.Ct. 2406, 2413 n. 6, 65 L.Ed.2d 424 (1980); *Gouled v. United States,* 255 U.S. 298, 312–13, 41 S.Ct. 261, 266, 65 L.Ed. 647 (1921). Defense counsel, as well as prosecutors, are required to bring alleged errors to the trial court's attention by making a proper objection or filing a motion. Trial courts are not generally bound to act *sua sponte.* The burden should not be on the court constantly to compare the evidence at trial with that from the earlier hearing. The parties thus have an incentive to make their objections known at the trial stage where corrections can be made without having to redo the entire proceeding.

■ During oral argument, counsel for Hicks stated that he did not anticipate Cole's trial testimony and the support it would lend to Hicks' claim of standing. That of course does not explain why counsel did not renew the suppression motion when Cole stepped down. Still less does it justify Hicks' failure to present, at the pretrial hearing, the alleged facts regarding the frequency of his visits to Cole's apartment, and the details of the fateful visit itself. These must have been fully known to Hicks, yet Hicks did not testify at the suppression hearing. He could have done so without incriminating himself. Under *Simmons v. United States,* 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968), a defendant's testimony at a suppression hearing in support of a Fourth Amendment claim may not be admitted subsequently at trial against him on the issue of guilt. *See, e.g., United States v. Carr,* 939 F.2d 1442, 1446 (10th Cir.1991).

## II

■ At his sentencing hearing, Hicks sought a two-point reduction in his offense level under the United States Sentencing Guidelines for acceptance of responsibility. *See* U.S.S.G. § 3E1.1(a). His argument focused on the fact that he had freely admitted at trial selling the crack to the undercover officer, the only charge on which the jury found him guilty. The trial court denied Hicks the two-point adjustment, although its reasons for doing so are not entirely clear. Because we are unsure of the trial court's precise rationale, and because reviewing the decision in any event would require us to decide unnecessarily a constitutional question that has split the courts of appeals, we vacate the sentence and remand for resentencing.

Hicks interprets the trial court's ruling as denying the two-point reduction because Hicks did not affirmatively accept responsibility for the conduct involved in the count on which the jury deadlocked—that is, pos-

**2.** In *Masiello v. United States,* 304 F.2d 399 (D.C.Cir.1962), we ordered such a remand in order to permit the district court to resolve in the first instance a credibility conflict between suppression testimony which did not support the court's preliminary ruling and trial testimony which did appear to lend such support. The defendant had renewed his suppression motion at trial, but the trial court had refused to reconsider its ruling.

**3.** To be sure, we stated in *Washington v. United States,* 401 F.2d 915, 919 n. 19 (D.C.Cir.1968), a case in which the defendant had not renewed his suppression motion at trial, *id.* at 918, that "we will, in any event, look to relevant evidence produced at trial for any adverse effect it might have upon the admission of disputed items." *Id.* at 919 n. 19. But this observation was entirely beside the point. Later in the same footnote we added "however" that there were no disputed facts and no "claim of discrepancy" between the evidence at trial and the evidence presented at the suppression hearing. *Id.* We then proceeded to affirm the district court's pre-trial ruling. *Id.* at 921.

session with intent to distribute. Hicks claims this ruling violated his Fifth Amendment privilege against compelled self-incrimination. The government thinks the trial court denied Hicks the two-point credit because it found that Hicks had lied in his trial testimony about the conduct covered by the second count. The transcript of the trial court's oral ruling can be read to embody either version.

We do not resolve the dispute. The propriety of either rationale depends on how one interprets § 3E1.1(a). At the time of Hicks' sentencing in July 1991, that Guideline required a defendant to accept responsibility for "his criminal conduct" in order to qualify for the reduction. U.S.S.G. § 3E1.1(a) (1991). Application Note 1(c) directed district courts to consider whether the defendant had admitted his involvement in "the offense and related conduct." *Id.* Application Note 1. The interpretive question raised is whether the Guideline required a trial court to consider a defendant's contrition only with respect to the offense of conviction, or rather with respect to all criminal conduct alleged by the government.[4] As Hicks points out, the latter rendition at least poses a substantial constitutional question when, as will frequently be the case, the possibility of further prosecution remains.

The majority rule from other circuits is that § 3E1.1(a), as it read in July 1991, required acceptance of responsibility for all related criminal conduct alleged by the government. *See United States v. Frierson,* 945 F.2d 650, 656 (3d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1515, 117 L.Ed.2d 651 (1992); *United States v. Mourning,* 914 F.2d 699, 705 (5th Cir.1990); *United States v. Ignancio Munio,* 909 F.2d 436, 439–40 & n. 4 (11th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1393, 113 L.Ed.2d 449 (1991); *United States v. Gordon,* 895 F.2d 932, 936 (4th Cir.), *cert. denied,* 498 U.S. 846, 111 S.Ct. 131, 112 L.Ed.2d 98 (1990). *See also United States v. Herrera,* 928 F.2d 769, 774–75 (6th Cir. 1991). A number of circuits, driven primarily by the lurking Fifth Amendment issue, have concluded that only the offense of

conviction can be considered. *See United States v. Piper,* 918 F.2d 839, 840–41 (9th Cir.1990) (per curiam); *United States v. Oliveras,* 905 F.2d 623, 628–29 (2d Cir. 1990); *United States v. Perez–Franco,* 873 F.2d 455, 458–59 (1st Cir.1989). These courts emphasized that prior to an amendment effective January 15, 1988, § 3E1.1(a) had required a defendant to accept responsibility only for "the offense of conviction." In promulgating the change, the Sentencing Commission had noted, ambiguously, "The purpose of this amendment is to clarify the guideline." U.S. SENTENCING COMMISSION, GUIDELINES MANUAL C–25 (June 15, 1988).

An amendment to the Sentencing Guidelines that became effective on November 1, 1992, seems to resolve the confusion. The amendment changes the language in § 3E1.1 to require a defendant to accept responsibility for "his offense." The amended Application Note 1(a) to § 3E1.1 indicates that the Guideline requires the showing of contrition only with respect to the offense of conviction. When first proposing the amendment, the Commission noted that the prior language "has been found to cause confusion." 57 Fed.Reg. 20,157 (May 11, 1992). Without comment, the Commission deleted this explanatory language from the final version of the amendment. *See* UNITED STATES SENTENCING COMMISSION, GUIDELINES MANUAL App. C, at 283 (Nov. 1, 1992).

In view of this revision, any interpretive ruling we issued here would have little future effect. Because the amendment would appear to preclude the Fifth Amendment issue from arising in the future, any constitutional decision we reached would be limited almost immediately to the instant case. Under these circumstances, and given the ambiguity in the trial court's ruling, the prudent course is to vacate Hicks' sentence and remand for resentencing. (Under U.S.S.G. § 1B1.11, also effective November 1, 1992, the resentencing will occur under the new version of the Guidelines unless such an application would violate the Ex Post Facto Clause of the Constitution.) We intimate no views about the cor-

---

**4.** This court previously reserved judgment on this issue in *United States v. Taylor,* 937 F.2d 676, 681 (D.C.Cir.1991).

rect application of the amended § 3E1.1(a) and accompanying application notes to Hicks' situation. The trial court retains broad discretion in making this determination. *United States v. Taylor,* 937 F.2d 676, 680 (D.C.Cir.1991).

We also emphasize that our disposition of this case does not mean that a defendant is entitled to resentencing anytime a relevant Guideline is amended during the pendency of an appeal. The result here is dictated by unique circumstances—an amendment that appears to render a substantial constitutional issue without future importance and a record that does not reveal the precise basis for the district court's ruling. We doubt that many similar cases will arise in the future.

We affirm defendant's conviction on count one of the indictment, vacate defendant's sentence and remand for resentencing in accordance with this opinion.