

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-5-2008

# USA v. McNeill

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3746

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. McNeill" (2008). *2008 Decisions.* Paper 718.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/718

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-3746

UNITED STATES OF AMERICA

v.

ORRIE MCNEILL,

Appellant

Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal Action No. 04-cr-00514)
District Judge: Honorable William G. Bassler

Argued December 13, 2007

Before: SLOVITER and AMBRO, Circuit Judges
POLLAK,[*] District Judge

(Opinion filed: August 5, 2008)

Robert J. DeGroot, Esquire (Argued)
56 Park Place
Newark, NJ 07102

        Counsel for Appellant

_____

[*]Honorable Louis H. Pollak, Senior United States District Judge for the Eastern
District of Pennsylvania, sitting by designation.

Christopher J. Christie
   United States Attorney
George S. Leone
   Chief, Appeals Division
Caroline A. Sadlowski (Argued)
   Assistant U.S. Attorney
Office of United States Attorney
970 Broad Street, Room 700
Newark, NJ 07102

     Counsel for Appellee

---

OPINION OF THE COURT

---

AMBRO, <u>Circuit Judge</u>

Appellant Orrie McNeill was convicted of two counts of heroin possession with intent to distribute, in violation of 21 U.S.C. § 841, and two counts of firearm possession in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924, pursuant to a jury trial in the United States District Court for the District of New Jersey. On appeal, he argues that the District Court erred in denying (1) his motion to suppress physical evidence as the fruit of an illegal search and (2) his motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c). We affirm.[1]

I.

In June 2004, McNeill and his girlfriend appeared in the lobby of the Swan Motel

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

in Linden, New Jersey. McNeill's girlfriend, Leslie Sanchez, was bleeding from the head and was hysterical. The couple asked that the motel manager call an ambulance, but requested that police not be notified. The manager called 911, and several police officers and an ambulance responded to the scene. The couple told police that Sanchez had hit her head on a piece of furniture while the couple was "fooling around" in their motel room, but police suspected much more.

While Sanchez was being treated and taken to a hospital, police attempted to question McNeill in the motel lobby. He was evasive and did not answer when asked if there were any other victims in his room. The officers asked McNeill to accompany them to the motel room so they could investigate. McNeill began walking in the direction of his motel room with the officers, but then fled down an alleyway. He was apprehended and taken to police headquarters. The officers then returned to McNeill's room to investigate whether there was another victim. After observing blood on the door frame and carpet leading to McNeill's room, police gained access to conduct a search. They announced their presence and then proceeded to search the motel room for victims.

What happened during the search is much contested in this appeal. Lieutenant Donald Tempalsky, one of the officers who conducted the search, testified at the suppression hearing that when the officers entered the room it was in total disarray. He testified that he observed a bag of powdery substance, Ziploc bags, and a box from a grinder, which is commonly used to dilute drugs, all in plain sight in the room. He further

3

stated that the closet door was open a "slit" and, through the open door, officers observed a Timberland shoebox containing small cellophane bags commonly used to package heroin. McNeill, by contrast, asserts that none of these items was in plain sight.

The officers did not seize any evidence at this time, but instead secured the room and went to obtain a warrant to search both the motel room and McNeill's automobile, which was in the motel parking lot. After obtaining a warrant, officers conducted a more thorough search of the motel room. They found over one kilogram of heroin, much of which was inside the Timberland shoebox and a black backpack, both found in the closet. Police also seized a loaded, 9mm Smith & Wesson semi-automatic handgun with a defaced serial number and ammunition. From a hidden compartment in McNeill's Ford Taurus, officers seized $2,480 in cash, a pager, a cell phone, McNeill's passport, and a copy of his birth certificate.

On the basis of what was found in the motel room and the car, McNeill was charged with one count of heroin possession with intent to distribute, in violation of 21 U.S.C. § 841, and one count of firearm possession in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924. Some months later, federal agents interviewed Sanchez in the course of preparing the Government's case against McNeill. She told them that McNeill also had a hidden compartment in his father's Ford Explorer. The agents then obtained the father's consent to search the Explorer and found in it a compartment containing ten cellophane envelopes of heroin, a loaded .380 caliber

4

Walther PPK semi-automatic handgun with a defaced serial number, a pager, and McNeill's original birth certificate and Social Security card. Thereafter a superseding indictment was issued, charging McNeill with an additional count of heroin possession and firearm possession.

McNeill filed a motion to suppress the evidence found in his motel room, which the District Court denied. Its rationale was that the warrantless search was justified under the exigent-circumstances exception to the warrant requirement (namely, that the officers reasonably believed that another injured victim could have been in the motel room). McNeill then filed a motion for reconsideration. The District Court held an evidentiary hearing but again denied the motion.

McNeill was tried by a jury and convicted on all counts. After he was convicted, McNeill filed a motion for judgment of acquittal on all counts pursuant to Federal Rule of Criminal Procedure 29(c) and, in the alternative, a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33. The District Court denied both motions. The Court sentenced McNeill to a 481-month term of imprisonment and a five-year term of supervised release.[2] He now appeals to us.

---

[2] McNeill was sentenced to one month above the statutory minimum sentence, which included a ten-year mandatory minimum on the count of possession with intent to distribute more than one kilogram of heroin, a five-year mandatory minimum on the first count of possession of a weapon in furtherance of a drug trafficking crime, and a twenty-five-year mandatory minimum on the second count of possession of a weapon in furtherance of a drug trafficking crime.

II.

A.    Motion to Suppress

McNeill first argues that the District Court erred in denying his motion to suppress the evidence found as a result of the initial warrantless search of his motel room. Specifically, he argues that no exigent circumstances excused the obtaining of a warrant.[3] "'We review the district court's denial of [a] motion to suppress for clear error as to the underlying facts, but exercise plenary review as to its legality in light of the court's properly found facts.'" *United States v. Lafferty*, 503 F.3d 293, 298 (3d Cir. 2007) (quoting *United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003)).

1.    Was the Search Justified by Exigent Circumstances?

"It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Brigham City v. Stuart*, 547

---

[3] McNeill also argues that the officers cannot justify their search of the shoebox in the closet under the doctrine of "plain view." This is certainly true, as the "plain view" doctrine applies only to warrantless seizures and not to warrantless searches. *Horton v. California*, 496 U.S. 128, 133 (1990) ("If 'plain view' justifies an exception from an otherwise applicable warrant requirement, . . . it must be an exception that is addressed to the concerns that are implicated by *seizures* rather than searches." (emphasis added)). Here, the officers merely observed the suspected contraband in the closet, but did not seize it until they had secured a valid warrant. McNeill's "plain view" argument thus misses its mark.

However, we construe McNeill's argument about whether the contraband was in "plain view" as an argument that the officers exceeded the scope of an appropriate exigent-circumstances search, *i.e.*, that they continued to search for evidence of a crime after they were satisfied that there were no victims present in the room or searched for evidence that would not have been in plain sight in the course of a limited search for victims.

6

U.S. 398, 403 (2006) (internal quotations omitted).  This presumption carries over to hotel rooms, as "[a] hotel room can clearly be the object of Fourth Amendment protection as much as a home or an office." *Hoffa v. United States*, 385 U.S. 293, 301 (1966).

There are, however, exceptions to the warrant requirement.  One exception is that the general warrant requirement will be dispensed with where "'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Brigham City*, 547 U.S. at 403 (quoting *Mincey v. Arizona*, 437 U.S. 385, 394 (1978)).  We have previously held that "[e]xigent circumstances exist where 'officers reasonably . . . believe that someone is in imminent danger,'" *Couden v. Duffy*, 446 F.3d 483, 496 (3d Cir. 2006) (quoting *Parkhurst v. Trapp*, 77 F.3d 707, 711 (3d Cir. 1996) (emphasis omitted)), and the police otherwise have probable cause to search, *Parkhurst*, 77 F.3d at 711.

Here, the officers had ample reason to believe that a third party could be in imminent danger.  When the police arrived at the motel, Sanchez was bleeding from the head and McNeill was covered in blood.  McNeill was evasive when questioned about whether there was anyone else in his room, and, when escorted to his room to check for additional victims, he fled.  When police reached McNeill's motel room, they found blood in the hallway and on the door frame leading into the room.  These circumstances make it objectively reasonable to believe that another victim could have been in the room. *See United States v. Black*, 482 F.3d 1035, 1040 (9th Cir. 2007) (upholding a search on

7

the ground that "the exigencies of domestic abuse cases present danger that, in an appropriate case, may override considerations of privacy" (internal quotation marks omitted)).

       2.     Was the Scope of the Search Properly Circumscribed by the Exigencies of the Situation?

That exigent circumstances justified the initial entry, however, does not end our inquiry, as an exigent-circumstances warrantless search must be "'strictly circumscribed by the exigencies which justify its initiation.'" *Mincey*, 437 U.S. at 393 (quoting *Terry v. Ohio*, 392 U.S. 1, 26 (1968)). McNeill argues that the officers searched the room more closely than was necessary to search for victims, and thus exceeded the scope of the exigencies present and instead conducted a general exploratory search. We take his claim to be that, had the officers limited themselves to a quick search for victims, they would not have observed the contraband that they then used as the basis to secure a search warrant, and, accordingly, all of the evidence found in the hotel room must be suppressed as the fruit of an illegal search. The Government responds that the police officers' search was proper in scope, and that any evidence they initially saw was readily apparent to them in the course of looking for victims.

       a.     Understanding the Scope of Our Review

McNeill identifies several contradictions in the record in an attempt to disprove the officers' assertions that the drugs and drug paraphernalia were readily apparent when the officers conducted the search for victims. He relies on both testimony from the

8

evidentiary hearing and from the trial in support of his argument.  At the outset, then, we must comment on what portions of the record we can properly review.

In arguing that the search was not proper in scope, McNeill references contradictions between testimony presented at the evidentiary hearing and testimony later presented at trial.  However, the District Court, in reaching its decision on the pre-trial motion to suppress, only had the benefit of the evidentiary hearing testimony and not the subsequent trial testimony.  In this context, some Courts of Appeals have held that, when reviewing a District Court's ruling on a pre-trial motion to suppress, an appellate court is limited to the record that was before the District Court and cannot supplement its analysis with testimony that later comes out at trial.  *See United States v. Hicks*, 978 F.2d 722, 724 (D.C. Cir. 1993) ("An appellate court should not rely on evidence first produced at trial to reverse a pre-trial denial of a suppression motion not renewed at trial.").  Thus, where testimony at trial potentially casts doubt on the veracity of earlier testimony, the proper course is for the defendant to renew his motion to suppress.  *See, e.g.*, *Hicks*, 978 F.2d at 724; *United States v. Thomas*, 875 F.2d 559, 562 n.2 (6th Cir. 1989) ("Unless the district court is given an opportunity to correct the error [upon a renewed motion to suppress], an appellate court cannot review evidence presented at trial which casts doubt upon a pre-trial suppression motion.").  Were we to adopt this rationale, McNeill's failure to renew his suppression motion before the District Court might limit the scope of our review to the testimony presented at the evidentiary hearing and not that presented at trial.

9

While we are mindful of how our colleagues in other circuits have resolved this question, we find it unnecessary at this time to adopt a new rule of practice that a criminal defendant must renew his suppression motion at trial or risk limiting the scope of appellate review. This is because McNeill's claim that the pre-trial suppression ruling is undermined by potentially contradictory trial testimony fails even if we address the merits of his claim, reviewing the facts for clear error and exercising plenary review over the legality of the search. We further believe this is a prudent course of action because the parties did not have the opportunity to address this issue fully in their briefs. We thus proceed to the merits of all of McNeill's suppression arguments.

i. Potential Discrepancies in Testimony Presented at the Evidentiary Hearing

Looking first at the record of the evidentiary hearing, McNeill argues that Lieutenant Tempalsky was not credible in his testimony about what was in plain sight in the motel room, and that Leslie Sanchez's testimony proves this. At the evidentiary hearing, Tempalsky testified that he saw the grinder box and Ziploc bags in plain sight when he entered the room and saw the black backpack and Timberland box through the open closet. Sanchez, by contrast, testified that she had not seen any of those items when she had been in the room earlier that morning, nor could she remember whether the closet door was open. Were we to credit Sanchez's testimony, it would tend toward the conclusion that the officers conducted a general exploratory search rather than one circumscribed by the exigency of looking for victims.

We are not reviewing this contradictory testimony with a blank slate, however, as we have the benefit of the District Court's ruling on this issue. The Court addressed the contradictory accounts of Tempalsky and Sanchez, "made individualized assessments of the credibility of each witness and assigned appropriate weight to the testimony based on [its] conclusions with respect to such." Ultimately, the Court found Tempalsky to be credible and rejected the testimony of Sanchez because it did not have confidence in her veracity.

"As we have stated[,] 'assessments of credibility by the trial court are entitled to great deference at the appellate level.'" *United States v. Givan*, 320 F.3d at 464 (quoting *United States v. Brothers*, 75 F.3d 845, 853 (3d Cir. 1996). Our review of the testimony from the evidentiary hearing leaves us convinced that Lieutenant Tempalsky's testimony had at least an indicia of reliability, and thus the District Court's determination was not clearly erroneous.[4]

      ii.      Potential Discrepancies Between Testimony at the Evidentiary

---

[4] In other portions of his brief, McNeill questions the police officers' credibility more generally, claiming that the totality of the circumstances suggest that the officers were disingenuous in conducting the search. Appellant's Br. 20–21. He cites, *inter alia*, that Tempalsky and other narcotics officers were the first to arrive at the scene of a domestic violence call, that Tempalsky did not secure the search warrant himself, and that 911 tapes suggest that the Mayor of Linden was informed that there was a large quantity of drugs in the room just minutes after the search warrant was issued. However, the District Court specifically considered each of these factors in a thorough evidentiary hearing. At the end of that hearing, the Court found the police officers and the Mayor credible. On appeal, McNeill fails to present us with any evidence to suggest that those credibility determinations were clearly erroneous.

Hearing and Testimony at Trial

While the District Court credited Tempalsky's testimony at the evidentiary

hearing, McNeill argues that subsequent testimony at the trial casts doubt on the Court's

credibility determination. Specifically, at the evidentiary hearing, Lieutenant Tempalsky

claimed to have conducted a warrantless search lasting one to two minutes. At trial,

another officer at the scene during the search, Officer Evan, testified that he was present

in the room for 15 to 20 minutes. According to McNeill, Officer Evan's testimony

undermines Tempalsky's assertion that the search was quick, which raises the suspicion

that it exceeded the proper scope of the exigencies present.

We first query whether these statements, taken in context, actually demonstrate a

discrepancy in the officers' testimony. In all major respects, Officer Evan's testimony is

consistent with that of Lieutenant Tempalsky. Evan testified that he, Lieutenant

Tempalsky and two other officers— Detective Fortuna and Officer Hatzelhoffer—were

present for the search of McNeill's motel room. He further testified that the officers

looked around the room and did not see a victim, but did observe drug packaging in an

open dresser drawer and a grinder box on the nightstand. Evan testified that Tempalsky

then "decided [that the officers] would have to obtain a search warrant to go any further."

Evan continued: "[A]fter ascertaining there was nobody else there, I spoke with

Lieutenant Tempalsky explaining that he can contact his narcotic boys. I was going to be

doing [the] domestic end of this. I'd be leaving, going to headquarters after I go outside

12

. . . . Also, Officer Hatzelhoffer would remain behind to secure the room until we get the search warrants." While Evan testified that he was in the room for "15 minutes, 20 minutes, if that," he never clarified whether the actual search took that long or whether that time period also included the post-search conversations between himself and Tempalsky about who was going to take on what role in the case.

We turn to Lieutenant Tempalsky. He testified that the actual search took "[l]ess than of — less than — maybe a minute. Maybe a minute [or] two. Maybe a minute." He then left the room with Detective Fortuna and had Officer Hatzelhoffer secure the room. Tempalsky stated that he remained "there" (presumably next to or even in the room) for "maybe a half hour" after he assigned Hatzelhoffer to secure the room. During this time, he was waiting for other officers to arrive to begin the process of applying for a search warrant.

Looking at Lieutenant Tempalsky's testimony alongside that of Officer Evan, it seems plausible that the actual search took only one or two minutes, but that the officers spent nearly 30 minutes in the immediate aftermath determining who would secure the room, apply for the search warrant, and handle the different aspects of the case. In this context, Officer Evan's testimony at trial concerning the time of the search is insufficient to upset the District Court's determination that Lieutenant Tempalsky was a credible witness.

The same is true of the other potential discrepancies McNeill raises between

13

Lieutenant Tempalsky's testimony at the evidentiary hearing and Officer Evan's testimony at trial. Evan testified that he, Tempalsky, Officer Hatzelhoffer, and Detective Fortuna were all present for the search, while Tempalsky could only "positively recall" that he and Fortuna were present. These statements are not directly inconsistent because Tempalsky did not state that only he and Fortuna were in the room, but merely that he knew at least he and Fortuna were there.

McNeill also highlights a potential discrepancy about who gave the officers the key to his motel room. Evan testified that the officers "located the [motel] manager" and "he gave permission to one of the maids to open the door" to McNeill's room, while Tempalsky testified that he didn't "have [an] independent recollection whether [the motel manager] handed [him] the key" or whether it came from the maid. Tempalsky did testify, however, that it was "[o]ne or the other" and that he didn't "remember who it was." These two accounts are also not directly contradictory, as it is consistent that the motel manager authorized a maid to open McNeill's room and Tempalsky, having talked to both the manager and the maid about gaining entry to the room, could not remember precisely which one provided the key. Again, we fail to see clear error in the District Court's determination that Lieutenant Tempalsky was a credible witness.

    b.    Reviewing the Legality of the Scope of the Search in Light of the
          District Court's Properly Found Facts

Having concluded that the District Court's finding that Lieutenant Tempalsky was a credible witness was not clearly erroneous, we must credit his testimony that he

14

observed the contraband in the course of his limited search for victims. Tempalsky testified that when he entered the room to check for victims he observed a box of Ziploc bags and a small box for a grinder on the nightstand; white, powdery residue on top of the dresser; and an open dresser drawer containing more Ziploc bags and small rubber bands. He further testified that one of the sliding closet doors was "slit" open and on the floor of the closet was a black backpack as well as an open shoe box that appeared to contain several hundred small cellophane bags, later determined to contain drugs. After ascertaining there were no victims present, the officers left the room and obtained a search warrant on the basis of the incriminating items they observed. [5]

Based on Tempalsky's account of the events, we do not believe the officers exceeded the scope of the search justified by the exigency of looking for victims. We would be faced with a very different case had Tempalsky testified that he found the Ziploc bags or the drug residue in a closed drawer in the nightstand or between the mattresses, as those are not places where a victim could be. However, on the basis of the facts found by the District Court and its credibility determinations, we hold that the scope of the search was properly circumscribed by the exigencies of the situation—namely, looking for another victim of the assault that occurred in the motel room. Within the

---

[5] Indeed, having observed the contraband in plain view, the officers would have been justified in seizing it without a warrant. *See Arizona v. Hicks*, 480 U.S. 321, 326 (1987) (noting that, in the course of an exigent-circumstances search, police can seize incriminating items in plain view). However, they chose instead to seek a warrant, and thus all of the evidence was seized pursuant to a valid warrant.

15

scope of this search, the officers then observed the drugs and evidence of drug dealing in plain sight. We discern no Fourth Amendment violation; thus, we affirm the District Court's denial of the motion to suppress.

B.      Sufficiency of the Evidence

McNeill's second challenge on appeal is that the District Court erred in denying his motion for judgment of acquittal on both counts of possessing a handgun in furtherance of a drug trafficking crime and on the count of heroin possession with intent to distribute stemming from the search of his father's Ford Explorer. Specifically, McNeill contends that the Government failed to establish (1) that he possessed the heroin and weapon in the Ford Explorer and (2) that his possession of the weapons was in furtherance of a drug trafficking crime. In reviewing the denial of a motion for a judgment of acquittal, we "must consider the evidence in the light most favorable to the government and affirm the judgment if there is substantial evidence from which any rational trier of fact could find guilt beyond a reasonable doubt." *United States v. Brown*, 3 F.3d 673, 680 (3d Cir. 1993) (internal quotation marks omitted).

The evidence was clearly sufficient to show that McNeill constructively possessed the firearm and the heroin found in the hidden compartment in his father's Ford Explorer. To establish constructive possession, the Government must show that the defendant "'knowingly has the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons.'" *Id.* (quoting

16

*United States v. Iafelice*, 978 F.2d 92, 96 (3d Cir. 1992)). At trial, the Government

presented testimony from Sanchez that she had driven with McNeill in the Explorer and

had seen him open the hidden compartment. She further testified that she had seen a

handgun inside the compartment and that she knew McNeill carried a handgun. The

Government also presented evidence that the handgun and heroin were found in the same

compartment alongside, among other things, McNeill's birth certificate and Social

Security card. This is certainly compelling evidence that he had dominion and control

over the contents of the compartment. Next, the envelopes of heroin found in the

compartment were stamped with the same "Grand Slam" logo as the envelopes found in

McNeill's motel room. Finally, in searching the motel room, the police officers found

ammunition that fit the gun found in the compartment. Taking all of this into account, the

evidence was more than sufficient for a jury to conclude that McNeill possessed the

contraband found in the hidden compartment of his father's vehicle.

Finally, McNeill argues that, insofar as he possessed either firearm, the evidence is

insufficient to establish that he did so in furtherance of a drug trafficking crime in

violation of 18 U.S.C. § 924.[6] This argument also fails. In determining whether a

---

[6] As amended in 1998, § 924 provides, in relevant part:
  Except to the extent that a greater minimum sentence is otherwise provided by this
  subsection or by any other provision of law, any person who, during and in relation
  to any crime of violence or drug trafficking crime . . . for which the person may be
  prosecuted in a court of the United States, uses or carries a firearm, or who, in
  furtherance of any such crime, possesses a firearm, shall, in addition to the
  punishment provided for such crime of violence or drug trafficking crime[,] . . . be

17

defendant used a firearm in furtherance of a drug trafficking crime, we look at the

following factors:

> the type of drug activity that is being conducted, accessibility of the firearm, the
> type of the weapon, whether the weapon is stolen, the status of the possession
> (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug
> profits, and the time and circumstances under which the gun is found.

*United States v. Sparrow*, 371 F.3d 851, 853 (3d Cir. 2004) (quoting *United States v.*

*Ceballos-Torres*, 218 F.3d 409, 414–15 (5th Cir. 2000)).  With respect to the handgun in

McNeill's motel room, the evidence presented at trial established that the firearm was

loaded, accessible, stored alongside heroin and drug packaging materials, and had a

defaced serial number.  As for the handgun in the Ford Explorer, the evidence at trial

established that the firearm was loaded, had a defaced serial number, and was found with

a pager and a substantial quantity of heroin that was stored in ten separate envelopes.

These facts easily satisfy the requirements of § 924.  *See Sparrow*, 371 F.3d at 853.

* * * * *

We thus affirm.


Pollak, District Judge, concurring and dissenting in part:

Insofar as the evidence presented to the jury in this case was admissible, that

evidence was, as the court holds, ample to support the crimes charged.  I therefore agree

---

sentenced to a term of imprisonment of not less than 5 years . . . .
18 U.S.C. § 924(c)(1)(A).

that we should affirm the District Court's entry of convictions on counts three and four of Orrie McNeill's superseding indictment, which both relate to materials found in the Ford Explorer titled to McNeill's father. I write separately, however, concerning the admission of the heroin and the handgun that constitute the grounds for the first heroin-possession-with-intent-to-distribute (count one) charge and the first firearm-in-furtherance (count two) charge.

As to this issue, I agree with the court's delineation of the governing legal principles: The District Court was correct in determining that in this case the police confronted "exigent circumstances" which justified a warrantless search of appellant McNeill's motel room. Further, I agree that the fact that McNeill did not renew at trial his pretrial motion to suppress does not bar this court from addressing his argument on appeal that testimony elicited at trial undermined the District Court's rationale for denying the suppression motion. Persuasive arguments can be advanced for adoption by this Circuit of the rule of practice that prevails in the Sixth Circuit, *United States v. Thomas,* 875 F.2d 559*,* 562 n.2 (6th Cir. 1989), and the D.C. Circuit, *United States v. Hicks*, 978 F.2d 722, 724 (D.C. Cir. 1993) ("An appellate court should not rely on evidence first produced at trial to reverse a pre-trial denial of a suppression motion not renewed at trial."). But, as the court suggests, the adoption, or non-adoption, of such a rule ought only to be considered in a setting in which the parties have reason to know that such an issue is likely to be addressed by the court. This is not such a setting.

However, although I agree with the court's legal premises, I am not in agreement with the court's disposition of the appeal.  Hence this separate statement.

## I.

As the court explains, the "exigent circumstance" that called for an immediate search of McNeill's motel room was occasioned by the scene that presented itself to the police officers who came to the motel in response to the motel manager's 911 call.  In the motel lobby were McNeill and his girl friend, Leslie Sanchez, the former smeared with blood and the latter, hysterical, bleeding from a head injury — an injury caused by what the police were told was "fooling around" in the motel room.  Concerned that the "fooling around" might have been more serious than characterized, and might have caused injury to others still in the motel room, the police officers concluded that entering the motel room without delay to look for and assist any other injured persons was imperative.  The search of the motel room yielded no other occupants and, according to Lieutenant Tempalsky, took "[m]aybe a minute or two. Maybe a minute."  But in that quick tour of the motel room Tempalsky and his fellow officers (according to Tempalsky's testimony at the evidentiary hearing conducted by the District Court on reconsidering and then reaffirming its initial denial of the motion to suppress) saw in plain sight a bag containing a powdery substance, Ziploc bags, a grinder box commonly used in drug processing, and, through a "slit" in a closet door, a Timberland shoebox in which were numerous small cellophane bags.  Armed with these observations, the police promptly sought and were

20

issued search warrants for the motel room and for McNeill's car. In the motel room the police found, and seized, a kilogram of heroin and a loaded handgun — items which in due course became the bases for the first and second counts of McNeill's superseding indictment.

As the court's opinion makes clear, the chief question at the hearing on the motion to suppress was whether, given the extent and detail of the observations to which Tempalsky testified, the "exigent circumstances" search may in fact have taken considerably longer than the minute or two to which Tempalsky testified and which, presumably, would have been all the time required to see whether there were any injured persons in the motel room. Tempalsky's testimony at the evidentiary hearing on the motion to suppress was to some extent countered by the testimony of Sanchez, who did not recall seeing the items observed by Tempalsky. The District Court, in its reaffirmation of its ruling denying the motion to suppress, following the evidentiary hearing, concluded that Tempalsky was credible and Sanchez was not.

## II.

As noted above, at trial McNeill did not renew his pretrial motion to suppress. But on appeal McNeill challenges the denial of the motion to suppress and puts great emphasis on testimony elicited at trial which, in McNeill's view, calls into question the District Court's grounds for denying the suppression motion. McNeill contends that some of the trial testimony undercuts the testimony given at the evidentiary hearing on the

21

suppression motion by Tempalsky, on whose credibility the District Court placed substantial reliance in denying the motion to suppress. Of particular pertinence, in appellant McNeill's view, is the testimony of Officer Evan that he was one of the police team, including Tempalsky, present in the motel room. Evan testified that he was in the motel room for about fifteen or twenty minutes. The court finds the contention unpersuasive:

> Looking at Lieutenant Tempalsky's testimony alongside that of Officer Evan, it seems entirely plausible that the actual search took only one two or minutes, but that the officers spent thirty minutes in the immediate aftermath determining who would secure the room, apply for the search warrant, and handle the different aspects of the case. In this context, Officer Evan's testimony at trial concerning the time of the search is insufficient to upset the District Court's determination that Lieutenant Tempalsky was a credible witness.

In similar fashion the court finds no merit in McNeill's invocation of other asserted discrepancies between Tempalsky's pre-trial testimony and Evan's trial testimony. "Again, we fail to see clear error in the District Court's determination that Lieutenant Tempalsky was a credible witness."

My difficulty with the court's ruling — "Again, we fail to see clear error in the District Court's determination that Lieutenant Tempalsky was a credible witness" — is that, on the record before us, I do not feel competent either to see clear error with respect to the District Court's "determination that Lieutenant Tempalsky was a credible witness," or to fail to see clear error. The District Court's determination that Tempalsky was credible was based on a pretrial record with respect to which the District Court was

22

judging Tempalsky's credibility as opposed to that of Sanchez — not as opposed to that of Evan. The deference owing to a trial court's determination of credibility is not, in my view, sufficient to instruct an appellate court to give virtually controlling weight — "not clearly erroneous" — when measuring that witness's testimony against the testimony of another witness who had not given testimony before the trial court at the time the trial court's credibility determination was made. In sum, I do not feel ready either to join, or to decline to join, the court's judgment with respect to the first two counts in the absence of a determination by the District Court of whether its reliance on the credibility of Tempalsky would be tempered, or would not be tempered, when measured against the testimony of Evan. In order to secure such a determination by the Distrct Court, which might in turn provide a reliable platform for this court's resolution of McNeill's appeal, I would remand this case to the District Court to conduct the inquiry I think is required.[7]

*Cf. United States v. Velasquez,* 885 F.2d 1076, 1092 (3d Cir. 1092) (Stapleton, J., concurring and dissenting).

---

[7] Whether the convictions on the first and second counts are upheld or set aside is no small matter. This is particularly true of the second count — the first of two use-of-a-firearm-in-furtherance-of-a-drug-crime charges. Under the sentence now in force, the conviction on the fourth count, which is the second use-of-a-firearm-in-furtherance-of-a-drug-crime count, was required to be no less than twenty five years, because it is a "second or subsequent conviction for that offense." 18 U.S.C. § 924(c)(1)(C)(I). If the first of the two firearm convictions were set aside, it would appear that the mandatory minimum sentence for the single remaining firearm charge would be five years. 18 U.S.C. § 924(c)(1)(A)(i).