POLLAK, District Judge,
concurring and dissenting in part:
Insofar as the evidence presented to the jury in this case was admissible, that evidence was, as the court holds, ample to support the crimes charged. I therefore agree that we should affirm the District Court’s entry of convictions on counts three and four of Orrie McNeill’s superseding indictment, which both relate to materials found in the Ford Explorer titled to McNeill’s father. I write separately, however, concerning the admission of the heroin and the handgun that constitute the grounds for the first heroin-possession-with-intent-to-distribute (count one) charge and the first firearm-in-furtherance (count two) charge.
As to this issue, I agree with the court’s delineation of the governing legal principles: The District Court was correct in determining that in this case the police confronted “exigent circumstances” which justified a warrantless search of appellant McNeill’s motel room. Further, I agree that the fact that McNeill did not renew at trial his pretrial motion to suppress does not bar this court from addressing his argument on appeal that testimony elicited at trial undermined the District Court’s rationale for denying the suppression mo *985 tion. Persuasive arguments can be advanced for adoption by this Circuit of the rule of practice that prevails in the Sixth Circuit, United States v. Thomas, 875 F.2d 559, 562 n. 2 (6th Cir.1989), and the D.C. Circuit, United States v. Hicks, 978 F.2d 722, 724 (D.C.Cir.1993) (“An appellate court should not rely on evidence first produced at trial to reverse a pre-trial denial of a suppression motion not renewed at trial.”).' But, as the court suggests, the adoption, or non-adoption, of such a rule ought only to be considered in a setting in which the parties have reason to know that such an issue is likely to be addressed by the court. This is not such a setting.
However, although I agree with the court’s legal premises, I am not in agreement with the court’s disposition of the appeal. Hence this separate statement.
I.
As the court explains, the “exigent circumstance” that called for an immediate search of McNeill’s motel room was occasioned by the scene that presented itself to the police officers who came to the motel in response to the motel manager’s 911 call. In the motel lobby were McNeill and his girl friend, Leslie Sanchez, the former smeared with blood and the latter, hysterical, bleeding from a head injury—an injury caused by what the police were told was “fooling around” in the motel room. Concerned that the “fooling around” might have been more serious than characterized, and might have caused injury to others still in the motel room, the police officers concluded that entering the motel room without delay to look for and assist any other injured persons was imperative. The search of the motel room yielded no other occupants and, according to Lieutenant Tempalsky, took “[mjaybe a minute or two. Maybe a minute.” But in that quick tour of the motel room Tempalsky and his fellow officers (according to Tempalsky’s testimony at the evidentiary healing conducted by the District Court on reconsidering and then reaffirming its initial denial of the motion to suppress) saw in plain sight a bag containing a powdery substance, Ziploc bags, a grinder box commonly used in drug processing, and, through a “slit” in a closet door, a Timberland shoebox in which were numerous small cellophane bags. Armed with these observations, the police promptly sought and were issued search warrants for the motel room and for McNeill’s car. In the motel room the police found, and seized, a kilogram of heroin and a loaded handgun—items which in due course became the bases for the first and second counts of McNeill’s superseding indictment.
As the court’s opinion makes clear, the chief question at the hearing on the motion to suppress was whether, given the extent and detail of the observations to which Tempalsky testified, the “exigent circumstances” search may in fact have taken considerably longer than the minute or two to which Tempalsky testified and which, presumably, would have been all the time required to see whether there were any injured persons in the motel room. Tempalsky’s testimony at the evidentiary hearing on the motion to suppress was to some extent countered by the testimony of Sanchez, who did not recall seeing the items observed by Tempalsky. The District Court, in its reaffirmation of its ruling denying the motion to suppress, following the evidentiary hearing, concluded that Tempalsky was credible and Sanchez was not.
II.
As noted above, at trial McNeill did not renew his pretrial motion to suppress. But on appeal McNeill challenges the denial of the motion to suppress and puts great emphasis on testimony elicited at *986 trial which, in McNeill’s view, calls into question the District Court’s grounds for denying the suppression motion. McNeill contends that some of the trial testimony undercuts the testimony given at the evidentiary hearing on the suppression motion by Tempalsky, on whose credibility the District Court placed substantial reliance in denying the motion to suppress. Of particular pertinence, in appellant McNeill’s view, is the testimony of Officer Evan that he was one of the police team, including Tempalsky, present in the motel room. Evan testified that he was in the motel room for about fifteen or twenty minutes. The court finds the contention unpersuasive:
Looking at Lieutenant Tempalsky’s testimony alongside that of Officer Evan, it seems entirely plausible that the actual search took only one two or minutes, but that the officers spent thirty minutes in the immediate aftermath determining who would secure the room, apply for the search warrant, and handle the different aspects of the case. In this context, Officer Evan’s testimony at trial concerning the time of the search is insufficient to upset the District Court’s determination that Lieutenant Tempalsky was a credible witness.
In similar fashion the court finds no merit in McNeill’s invocation of other asserted discrepancies between Tempalsky’s pretrial testimony and Evan’s trial testimony. “Again, we fail to see clear error in the District Court’s determination that Lieutenant Tempalsky was a credible witness.”
My difficulty with the court’s ruling— “Again, we fail to see clear error in the District Court’s determination that Lieutenant Tempalsky was a credible witness”—is that, on the record before us, I do not feel competent either to see clear error with respect to the District Court’s “determination that Lieutenant Tempalsky was a credible witness,” or to fail to see clear error. The District Court’s determination that Tempalsky was credible was based on a pretrial record with respect to which the District Court was judging Tempalsky’s credibility as opposed to that of Sanchez—not as opposed to that of Evan. The deference owing to a trial court’s determination of credibility is not, in my view, sufficient to instruct an appellate court to give virtually controlling weight— “not clearly erroneous”—when measuring that witness’s testimony against the testimony of another witness who had not given testimony before the trial court at the time the trial court’s credibility determination was made. In sum, I do not feel ready either to join, or to decline to join, the court’s judgment with respect to the first two counts in the absence of a determination by the District Court of whether its reliance on the credibility of Tempalsky would be tempered, or would not be tempered, when measured against the testimony of Evan. In order to secure such a determination by the District Court, which might in turn provide a reliable platform for this court’s resolution of McNeill’s appeal, I would remand this case to the District Court to' conduct the inquiry I think is required.[7] Cf. United States v. *987 Velasquez, 885 F.2d 1076, 1092 (3d Cir.1989) (Stapleton, J., concurring and dissenting).

. Whether the convictions on the first and second counts are upheld or set aside is no small matter. This is particularly true of the second count—the first of two use-of-a-firearm-in-furtherance-of-a-drug-crime charges. Under the sentence now in force, the conviction on the fourth count, which is the second use-of-a-firearm-in-furtherance-of-a-drug-crime count, was required to be no less than twenty five years, because it is a “second or subsequent conviction for that offense..” 18 U.S.C. § 924(c)(l)(C)(I). If the first of the two firearm convictions were set aside, it would appear that the mandatory minimum sentence for the single remaining firearm charge would be five years. 18 U.S:C. § 924(c)(l)(A)(i).