NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3421
_____

UNITED STATES OF AMERICA

v.

SADIQ CALLOWAY,
a/k/a Omar Mullins;
a/k/a Marcus Arrington

SADIQ CALLOWAY,
                          Appellant
_____

On Appeal from United States District Court
for the District of New Jersey
(D. NJ. No. 2-08-cr-00775-001)
District Judge: Faith S. Hochberg
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 13, 2014

Before:  FISHER, VAN ANTWERPEN and TASHIMA,[*] *Circuit Judges*.

(Filed:  July 2, 2014)
_____

OPINION OF THE COURT
_____

[*]The Honorable A. Wallace Tashima, Senior Circuit Judge for the Ninth Circuit
Court of Appeals, sitting by designation.

TASHIMA, *Circuit Judge*.

Appellant Sadiq Calloway ("Calloway") was convicted of possession of a detectable amount of heroin with intent to distribute, pursuant to 21 U.S.C. §§ 841(a)(1) & (b)(1)(C) (Count 1); using and carrying a firearm during and in relation to a drug trafficking crime, and possessing that gun in furtherance of the crime, pursuant to 18 U.S.C. § 924(c)(1)(A) (Count 2); and possessing a firearm and ammunition after having been convicted of a felony, pursuant to 18 U.S.C. § 922(g)(1) (Count 3). The conviction was based on a firearm and drugs found on Calloway's person during a May 22, 2008 traffic stop (the "May 22 stop").

Calloway filed a pre-trial motion to suppress the evidence obtained during the May 22 traffic stop, which the District Court denied. After trial, Calloway moved for a new trial pursuant to Federal Rule of Criminal Procedure 33, contending that he was incompetent to stand trial and that he received ineffective assistance of counsel. He did not file a renewed suppression motion or otherwise raise the suppression issue after trial. The District Court denied the Rule 33 motion.

Calloway now appeals, asserting three arguments: (1) that this Court should order a new trial because he received ineffective assistance of counsel; (2) that his conviction on Count 2 must be vacated because the jury instructions on that count were flawed; and (3) that the District Court erred in denying his suppression motion. For the reasons set forth below, we will affirm the conviction and the orders of the District Court.

2

Because we write principally for the parties, who are familiar with the factual context and legal history of this case, we will set forth only those facts that are necessary to our analysis.

On May 22, 2008, four Newark, New Jersey, police officers patrolling in a high crime area of Newark heard a loud noise emanating from an approaching Cadillac and observed the Cadillac moving at a high rate of speed in an oncoming traffic lane while passing another vehicle. Based on the traffic infraction and the noise emanating from the vehicle, the officers followed the Cadillac in two unmarked cars. After several blocks, before the officers activated the siren and lights on the lead car, the Cadillac pulled over and the driver exited. The officers, who were dressed in plainclothes and wore their badges around their necks, approached the vehicle. Officer Horacio Lorenzo ("Lorenzo") approached the driver, who was by then approximately ten steps away from the car, while the other three officers approached the vehicle, in which Calloway and two other passengers were seated. Lieutenant Eric Ingold ("Ingold") ordered the passengers to show their hands. According to Ingold, two passengers obeyed, but Calloway did not. Ingold then ordered the passengers to place their hands on the ceiling of the car. According to Ingold, again, the two passengers complied, but Calloway did not. At that time, Ingold could not see Calloway's hands, which appeared to be around his waist area.

Ingold testified that Calloway's behavior indicated a safety issue. He therefore alerted the other officers to Calloway's behavior, saying "he's moving – he's moving, he's moving, he's not showing his hands. He's not showing his hands." Ingold and the other

3

officers then drew their weapons and Lorenzo approached the vehicle where he, too, observed that Calloway had not placed his hand on the ceiling of the car. At that time, Calloway had his hands partially up, "like half up and half down," and Lorenzo noticed that he was "looking all around, as if – as if you were looking for a way out." Lorenzo reached into the car and touched Calloway's waistband, where he felt the handle of a gun. He took the gun, handcuffed Calloway, and removed him from the vehicle. In the search that followed, officers found $1,350 and twenty decks of heroin in Calloway's pockets.

Before trial, Calloway moved to suppress the gun and the heroin recovered during the search on the ground that the search of his person during the May 22 stop was illegal under the Fourth Amendment. The District Court denied the motion. Calloway was then convicted by a jury on all counts. After trial, he moved for a new trial under Rule 33. The District Court denied the motion. Calloway timely appealed.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## III.

### A.

We first consider Calloway's ineffective assistance of counsel contention. In order to establish ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant must show that "counsel's performance was so deficient that it fell below an objective standard of reasonableness under prevailing professional norms" and that the deficient performance prejudiced the defense. *Buehl v. Vaughn*, 166 F.3d

4

163, 169 (3d Cir. 1999). On the reasonableness prong, the defendant must show that counsel's conduct fell outside "the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). On the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

We do not address the merits of Calloway's claim, however, because we conclude that the claim should be brought in a collateral attack on the conviction pursuant to 28 U.S.C. § 2255. "Ineffective assistance of counsel claims are not generally entertained on direct appeal." *United States v. Headley*, 923 F.2d 1079, 1083 (3d Cir. 1991). Rather, "[t]his court has held repeatedly, the proper avenue for pursuing such claims is through a collateral proceeding in which the factual basis for the claim may be developed." *Id.* (internal quotation marks omitted).

A narrow exception to this rule exists "[w]here the record is sufficient to allow determination of ineffective assistance of counsel, [and] an evidentiary hearing to develop the facts is not needed." *Id.* We do not, however, find the narrow exception applicable in this case. Calloway asserts several ways in which his trial counsel was purportedly inadequate, all challenging counsel's strategic decisions at trial.

Based on the record before us, we "have no way of knowing whether [these] . . . action[s] by counsel had a sound strategic motive or [were] taken because the counsel's alternatives were even worse." *Massaro v. United States*, 538 U.S. 500, 505 (2003).

5

Because there has been no hearing at which Calloway's trial counsel could have "explained the reasons for his actions," *United States v. Cocivera*, 104 F.3d 566, 571 (3d Cir. 1996), the record only "reflect[s] the action taken by counsel but not the reasons for it," *Massaro*, 538 U.S. at 505. We therefore conclude that the record is not sufficiently developed to allow us to evaluate Calloway's ineffective assistance of counsel claim on direct appeal. *See id.*; *Gov't of V.I. v. George*, 741 F.2d 643, 646 (3d Cir. 1984) (declining to address an ineffective assistance of counsel claim when the defendant made various allegations about facts outside the record); *cf. Cocivera*, 104 F.3d at 571 (considering an ineffective assistance of counsel claim on direct appeal when the district court had held a hearing on the issue part-way through trial, at which the attorney "explained the reasons for his actions and confirmed his preparedness and willingness to proceed").

We will, therefore, affirm the District Court's denial of Calloway's motion for a new trial based on ineffective assistance of trial counsel, without prejudice to his right to initiate a collateral proceeding for the resolution of this claim on the merits.

B.

We next consider Calloway's argument that his conviction on Count 2 should be vacated because the District Court's jury instructions were flawed. We will not, however, address the merits of Calloway's argument because we conclude that his challenge to the jury instructions is barred. "Because [Calloway] made a joint request in favor of the very instructions he now challenges, he waived his right to raise these instructional issues on appeal under the invited error doctrine." *United States v. Ozcelik*, 527 F.3d 88, 97 n.6 (3d

6

Cir. 2008). We are unpersuaded by Calloway's contention that he should not be barred from challenging the instructions because he merely agreed to the Government's proposed instructions. Contrary to Calloway's assertion, he did not merely agree to the Government's instructions, but submitted a joint request with the Government proposing the exact instructions that the District Court used at trial. He thus cannot escape the invited error doctrine by arguing that he merely acquiesced to instructions proposed by the Government or the court. We will, therefore, deny Calloway's challenge to Count 2 based on purported errors in the jury instructions.

## C.

Finally, we turn to Calloway's appeal of the District Court's denial of his motion to suppress the firearm and drugs that were found during the May 22 stop. "We review the district court's denial of the motion to suppress for clear error as to the underlying facts, but exercise plenary review as to its legality in light of the court's properly found facts." *United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003) (internal quotation marks and alterations omitted).

## 1.

As a preliminary matter, the Government contends that the arguments raised in this appeal are waived because Calloway relies on different evidence than the evidence the District Court considered in ruling on the suppression motion. "[T]o preserve an argument and avoid waiver, the argument presented in the Court of Appeals must depend on both the same legal rule and the same facts as the argument presented in the District Court." *United States v. Joseph*, 730 F.3d 336, 342 (3d Cir. 2013).

7

The District Court held a hearing on Calloway's suppression motion and, based on the evidence adduced at that hearing, denied the motion. Calloway did not renew his suppression motion before the District Court after trial, but now relies on evidence adduced at trial in support of his argument that the gun and heroin should have been suppressed. For this reason, the Government contends that Calloway's argument on appeal does not rely on the "same facts as the argument presented in the District Court," *id.*, and is thus waived.

In this context, some circuits have held that the appellate court may consider the arguments on appeal but its review is limited to the record that was before the lower court when it ruled on the suppression motion and it may not consider evidence adduced at trial. *See, e.g.*, *United States v. Bass*, 661 F.3d 1299, 1303-04 (10th Cir. 2011); *United States v. Hicks,* 978 F.2d 722, 724-25 (D.C. Cir. 1992). We do not decide, however, whether Calloway may appeal a suppression motion based on new evidence adduced at trial because, as discussed below, Calloway's argument that the evidence derived from the May 22 stop should be suppressed fails even if we consider the new evidence.

2.

Under *Terry v. Ohio*, 392 U.S. 1 (1968), an officer may "stop and frisk" an individual if two circumstances are satisfied: First, the investigatory stop must be lawful; and second, the officer must have a reasonable suspicion that the person apprehended is armed and dangerous. *See Arizona v. Johnson*, 555 U.S. 323, 326-27 (2009).

The first requirement is not at issue in this case. In the traffic-stop setting, the first requirement is satisfied "whenever it is lawful for police to detain an automobile and its

8

occupants pending inquiry into a vehicular violation." *Id.* at 327. Because the officers here approached the Cadillac in which Calloway was a passenger after observing it drive at a high rate of speed in the oncoming traffic lane, the stop was lawful. *See United States v. Moorefield*, 111 F.3d 10, 12 (3rd Cir. 1997) ("It is well-established that a traffic stop is lawful under the Fourth Amendment where a police officer observes a violation of the state traffic regulations." (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977)).

Calloway contends that, even if the stop was lawful, Lorenzo did not have a reasonable suspicion that Calloway was armed and dangerous; therefore, the second *Terry* requirement is not satisfied. We disagree. "[A] pat-down for weapons can occur only where the officer is 'able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Id.* at 13 (quoting *Terry*, 392 U.S. at 21). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27. We conclude that the officers here have pointed to specific and articulable facts showing a reasonable suspicion that Calloway was armed and dangerous.

The traffic stop occurred in a high crime area where an officer had been shot the previous year. While not enough to create suspicion in itself, that a stop occurred in an unsafe or high crime area can, along with other factors, support the reasonable inference that an individual is armed and dangerous. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (noting that the fact that a stop occurred in a high crime area is "among the relevant contextual circumstances in a *Terry* analysis").

9

Under this Court's precedent, the circumstances here are sufficient to justify a *Terry* frisk. We confronted a similar set of circumstances in *Moorefield* and concluded that the frisk of a passenger during a traffic stop was permissible under *Terry. See* 111 F.3d at 14. There, the defendant made "furtive hand movements and refus[ed] to obey the officers' orders." *Id.* In response to instructions to the defendant to remain in the car with his hands in view, he "attempted to exit the vehicle and then raised and lowered his hands several times . . . and appeared to shove something down toward his waist." *Id.* The frisking officer testified that this "behavior was consistent with the behavior of a person trying to conceal something." *Id.*

Although Calloway did not attempt to exit the vehicle, his other actions, like those of the defendant in *Moorefield*, "embodied the kind of specific, articulable facts that *Terry* contemplates and, therefore, warranted a pat-down search for weapons." *Id.* As in *Moorefield,* Calloway repeatedly disobeyed an order to show his hands and officers observed him with his hands near his waist and then his hands partially in the air. Also as in *Moorefield*, Ingold testified that this behavior creates a threat to officers effectuating a traffic stop. *Id.*; *see also Johnson*, 555 U.S. at 330 (noting that "traffic stops are especially fraught with danger to police officers [and] [t]he risk of harm to both the police and the occupants of the stopped vehicle is minimized . . . if the officers routinely exercise unquestioned command of the situation" (internal quotation marks, citations, and alterations omitted)). In addition to these circumstances, the officers observed that Calloway was looking around in a way that indicated he might attempt to escape and the stop occurred in a high-crime area. *See Moorefield*, 111 F.3d at 14.

10

While Lorenzo, who conducted the frisk, did not observe all of the suspicious behavior personally, the other officers communicated Calloway's general behavior to him; Lorenzo could therefore rely on the observations of his fellow officers, as well as on his own observations, in assessing the risk that Calloway was armed and dangerous. *See United States v. Whitfield*, 634 F.3d 741, 745-46 (3d Cir. 2010) (holding that the reasonableness of a *Terry* stop and frisk may be measured by the collective knowledge of the officers at the scene, who "work[] together as a unified and tight-knit team"). Accordingly, we conclude that the totality of the circumstances justified Lorenzo's frisk of Calloway. *See Moorefield*, 111 F.3d at 14; *Whitfield*, 634 F.3d at 744-46 (concluding that a reasonable suspicion of criminal activity existed when officers making a stop in a high crime area observed that the defendant refused to comply with orders and made a "furtive gesture" in an "apparent effort to protect something"). We will, therefore, affirm the District Court's denial of Calloway's motion to suppress the evidence found as a result of the May 22 stop.

IV.

For the foregoing reasons, we will affirm Calloway's conviction under Count 2 and affirm the District Court's orders denying Calloway's motion for a new trial and his motion to suppress.